**UNITED STATES, Appellee,**

v.

**Jorge Ivan BERRIO–LONDONO,**
**Defendant, Appellant.**

**No. 90–1567.**

United States Court of Appeals,
First Circuit.

Heard May 6, 1991.
Decided Oct. 11, 1991.

Roger A. Cox, by appointment of the Court, for defendant, appellant.

Brien T. O'Connor, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty. was on brief, for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRES,* District Judge.

TORRES, District Judge.

This is an appeal by Jorge Ivan Berrio–Londono from his convictions for possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to

* Of the District of Rhode Island, sitting by desig-    nation.

distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, respectively. The issue presented is whether the District Court erred in refusing to strike the testimony of a government witness who refused, on self-incrimination grounds, to answer certain questions addressed to him during cross-examination. We conclude that the trial judge did not err, and therefore, we affirm the conviction.

## BACKGROUND

On June 12, 1989, DEA agents arrested Berrio–Londono and three companions, Jorge Agudelo, Hildardo Alvarez and Antonio Palacio Calle, as they were leaving a Holiday Inn in Brookline, Massachusetts where Berrio–Londono and Calle had shared a room. At the time of the arrest, Alvarez was carrying a duffel bag containing 12 kilograms of cocaine. At the behest of someone named Lonnie, the cocaine was being taken to a private airplane waiting to transport it from Logan Airport to Detroit.

In November of 1989, Berrio–Londono, Agudelo, Alvarez and Calle were tried on charges of possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute it. Agudelo and Calle were convicted, but a mistrial was declared with respect to Alvarez and Berrio–Londono because the jury was unable to reach a unanimous verdict regarding the charges against them. Two months later, Berrio–Londono was retried. At that trial, Calle, who was awaiting sentencing for his role in the offense, testified as a government witness. Berrio–Londono was convicted and sentenced to 120 months imprisonment.

The gist of Calle's testimony was that on June 11, 1989, he was offered $5,000 by John Mesa, a known drug trafficker, to fly to Boston and pick up a package. Mesa also asked Calle to take Berrio–Londono with him. When Calle and Berrio–Londono arrived in Boston, they went to Agudelo's apartment where they were shown a duffel bag containing "the merchandise." Agudelo then drove Calle and Berrio–Londono to a Holiday Inn in Brookline where they rented a room. After registering, Calle telephoned Mesa and was told that someone named Lonnie would call Calle from Detroit. Shortly after that, Lonnie telephoned the hotel room and told Calle that arrangements had been made for a limousine to transport him and "the merchandise" to the airport where Calle was to board a waiting private airplane bound for Detroit.

After speaking with Lonnie, Calle and Berrio–Londono discussed whether they both would take the cocaine to Detroit or whether Berrio–Londono would take it because he was more presentably dressed than Calle. Berrio–Londono then left the room to determine if there were any police in the vicinity. Ten minutes later he returned with Agudelo and Alvarez. Agudelo stated that he had left "the merchandise" in his car. The four men remained in the hotel room until a limousine driver arrived and inquired as to who was going to the airport. Agudelo stated that Calle and Berrio–Londono were going and sent Alvarez to retrieve the duffel bag. All four men were arrested as they left the hotel.

Berrio–Londono disputes Calle's version of the facts. He testified that he accompanied Calle to Boston to do some sightseeing. He also denied going to Agudelo's apartment or having any knowledge of the telephone conversation between Calle and Lonnie. More germane to this appeal is his argument that the trial judge erred in refusing to strike Calle's testimony after Calle refused, on Fifth Amendment grounds, to answer questions about alleged drug transactions between him and Lonnie during April and May of 1989. Specifically, Berrio–Londono cites the following excerpts from the record as illustrative of what he claims was a deprivation of his Sixth Amendment confrontation rights requiring that Calle's testimony be stricken:

Q: How long had you known Lonnie?

A: I take the Fifth Amendment.

Transcript Vol. IV at 151, *United States v. Berrio–Londono*, Cr. No. 89–171, (D.Mass. Feb. 9, 1990) [hereinafter "Tr. Vol. ——"].

Q: And, sir, prior to June 12th, 1989, you had conversations with Lonnie

similar to the one you had at the Holiday Inn; isn't that true?

A: I take the Fifth Amendment.

(Tr. Vol. V at 6.)

Q: Sir, where were you on May 16th, 1989?

A: I take the Fifth Amendment.

Q: Did you speak to Lonnie on May 16th, 1989, sir?

A: No, I take the Fifth.

Q: Sir, are you aware that the Drug Enforcement Administration has information concerning your whereabouts on May 16, 1989?

A: I take the Fifth Amendment.

(Tr. Vol. V at 7.)

Q: Sir, this was not the first time you had done this type of work for Mr. Mesa, on June 12th, 1989, was it?

A: I take the Fifth Amendment.

(Tr. Vol. V at 15.)

In denying the motion to strike, the District Judge recognized that Berrio–Londono was "entitled to inquire into [Calle's] relationship with Lonnie to the extent that it is relevant to this conspiracy" but noted that the questions posed related to a time period different from that charged in the indictment or referred to in Calle's direct testimony. (Tr. Vol. V at 3.) The District Judge also concluded that Calle's refusal to answer did not impair Berrio–Londono's ability to challenge his credibility because defense counsel was free to argue to the jury that it could infer that Calle had been involved in other criminal activities for which he was attempting to gain favorable treatment in exchange for his testimony.

## DISCUSSION

■ The Sixth Amendment to the United States Constitution gives a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that this right includes "an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988); *see also Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974). The purpose of protecting the right to cross-examine is to afford the defendant an opportunity to impeach the credibility of a witness and to explore the witness' motives and biases. *United States v. Garcia–Rosa*, 876 F.2d 209, 237 (1st Cir.1989), *cert. denied, Alvarez v. U.S.*, 493 U.S. 1030, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990).

However, the right to cross-examine is not absolute. *Id.* "The confrontation clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish.'" *United States v. Noone*, 913 F.2d 20, 32 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991) (quoting *United States v. Owens*, 484 U.S. at 559, 108 S.Ct. at 843). Thus, we have previously held that:

> Once the defendant has been afforded a reasonable opportunity to question a witness' veracity and motivation, the trial judge enjoys broad discretion in determining the scope and extent of cross-examination.... "The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has already been developed."

*Garcia–Rosa*, 876 F.2d at 237 (citations omitted) (quoting *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980)).

■ The task of the trial judge is to balance the probative value of the proposed cross-examination against the dangers of unfair prejudice, unnecessary delay and the likelihood of confusion. The trial judge's decision in striking that balance will be overturned only for abuse of discretion. *Id.*

■ In determining whether a witness's refusal to answer questions posed during cross-examination constitutes a denial of the defendant's confrontation rights and requires striking the witness's testimony, a distinction must be drawn between direct and collateral matters. If the subject of the inquiry is closely related to the commission of the crime or the witness's testimony with respect to a material issue, striking

the witness's testimony may be warranted. On the other hand, if the inquiry involves only collateral matters or cumulative material concerning credibility, a cautionary instruction as to the weight to be given to the witness's testimony normally will suffice. *United States v. Stubbert*, 655 F.2d 453, 458 (1st Cir.1981). As we said previously:

> not every invocation of the fifth amendment privilege against self-incrimination results in a denial of the sixth amendment right of confrontation and requires striking the witness's testimony.... [T]he essential inquiry "must finally be whether defendant's inability to make the inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony."

*Turner v. Fair*, 617 F.2d 7, 10 (1st Cir. 1980) (quoting *United States v. Rogers*, 475 F.2d 821, 827 (7th Cir.1973)). Put somewhat differently,

> [t]he determination whether a defendant has been denied the right to confront and cross-examine a witness requires an "analysis of the purpose of the inquiry and the role which the answer, if given, might have played in the defense."

*Id.* (quoting *United States v. Cardillo*, 316 F.2d 606, 612 (2d Cir.), *cert. denied*, 375 U.S. 822, 857, 84 S.Ct. 60, 123, 11 L.Ed.2d 55, 284 (1963)).

█ In this case, evidence regarding any previous drug offenses that may have been committed by Calle and/or Lonnie was not relevant to Berrio–Londono's guilt or innocence. Any such offenses occurred one to three months before the events described in the indictment, and there is no indication that they bore any connection to Berrio–Londono's participation in the conspiracy of June 12. Moreover, any past dealings Calle may have had with Lonnie were unrelated to Calle's direct testimony which was limited to describing the events of June 11–12 and Berrio–Londono's participation in them.

Finally, we are not persuaded by the argument that Calle's refusal to answer questions about those dealings deprived Berrio–Londono of the opportunity to show that Calle had a motive to distort the facts, namely, a hope that he might obtain more lenient treatment for prior criminal acts. Berrio–Londono had ample opportunity to probe whether Calle had any expectation of favorable treatment in exchange for his testimony. Berrio–Londono was not prevented from inquiring about any promises or inducements Calle may have received regarding punishment for his alleged participation in past crimes. In fact, Calle testified that his only agreement with the government was to cooperate and tell the whole truth. Berrio–Londono's right to explore Calle's possible incentives to prevaricate did not give him carte blanche to question Calle about every potentially illegal act he may ever have committed.

Equally important is the fact that such evidence would, as the trial judge said, have been "gilding the lily." Defense counsel ably developed a number of facts that could have led the jury to question Calle's credibility and motives, including his admissions that he had been previously arrested on drug charges, that he had been deported from and illegally reentered the United States under an assumed name, and that he had been convicted of participating in the June 12 conspiracy. Calle specifically acknowledged that he was facing a minimum mandatory ten year sentence for the latter conviction and hoped that the sentencing judge would consider his cooperation in this case in mitigation of his punishment. Furthermore, he admitted that he had offered to testify against Berrio–Londono in an effort "to do whatever I can to help myself out here." (Tr.Vol. V at 21). Berrio–Londono's inability to superimpose on those admissions the possibility that Calle might also be concerned about punishment for other offenses can hardly be characterized as an abridgement of his right to effective cross-examination. As already noted, Calle specifically denied having received any promises or inducements, and Berrio–Londono does not even suggest that there was any discussion between Calle and the government with respect to prior offenses or Calle's punishment for them.

Furthermore, the circumstances surrounding Calle's refusal to answer underscored the very point Berrio–Londono sought to make. Calle was required to invoke his privilege against self-incrimination in the presence of the jury, thereby permitting it to infer that Calle had, in fact, been involved in prior drug transactions and might be hoping to gain favor from the government. *See United States v. Kaplan,* 832 F.2d 676, 685 (1st Cir.1987), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). Moreover, the District Judge specifically invited Berrio–Londono to argue precisely that to the jury and later instructed the jury that it could draw adverse inferences from Calle's refusal to answer and could take that refusal into account in assessing his credibility and motives.

## CONCLUSION

For all of the foregoing reasons, we hold that Berrio–Londono was not deprived of an opportunity to effectively cross-examine Calle and that the District Court did not abuse its discretion in refusing to strike Calle's testimony. Therefore, the judgment of conviction is AFFIRMED.