# United States Court of Appeal
## For the First Circuit

No. 05-2042

UNITED STATES OF AMERICA,

Appellee,

v.

MARIA DE LOS ANGELES RIVERA RANGEL,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

---

Before

Boudin, Chief Judge,
Selya, Circuit Judge, and
Schwarzer,* Senior District Judge.

---

Ignacio Fernández de Lahongrais, with whom Edgar Vega Pabon was on brief, for appellant.
Kathleen A. Felton, United States Dep't of Justice, with whom H.S. Garcia, United States Attorney, Guillermo Gil and Maritza Gonzalez De Miranda, Assistant United States Attorneys, were on brief, for appellee.

---

October 25, 2006

---

_____
*Of the Northern District of California, sitting by designation.

**SELYA**, **Circuit Judge**. This is a sequel to an earlier appeal. See United States v. Rivera Rangel, 396 F.3d 476 (1st Cir. 2005). In it, defendant-appellant Maria de Los Angeles Rivera Rangel (Rivera) tries once again to defenestrate her Hobbs Act convictions. This time around, she substitutes a series of Sixth Amendment claims for her previously unrequited claims of evidentiary insufficiency. Her new arguments fare no better than her old arguments: although her appellate counsel has pleaded her case ably, the freshly minted argumentation lacks adequate grounding in the trial record. We therefore affirm the appellant's convictions. At the same time, however, we accept the parties' joint importuning and remand for resentencing.

We rehearse the background only to the extent necessary to explain our reasoning, urging readers who hunger for a more complete profile to consult our earlier opinion. See id. at 480-82.

The appellant served for some time as a top aide to the governor of Puerto Rico. On August 23, 2002 — after both she and the governor whom she served had left office — a federal jury convicted her of one count of conspiracy to interfere with commerce by extortion induced by fear of economic harm and/or under color of official right, 18 U.S.C. § 1951, and one count of aiding and abetting the underlying offense, id. § 2. The convictions rested largely on the testimony of two businessmen, José Miguel Ventura

-2-

Asilis (Ventura) and Angel Luis Ocasio Ramos (Ocasio). These men testified that they had given money to the appellant in exchange for access to high-ranking government officials.

The trial judge ordered a judgment of acquittal notwithstanding the jury verdict or, in the alternative, a new trial. On appeal, we reinstated the verdict. See Rivera Rangel, 396 F.3d at 486. In the course of that appeal, we rejected Rivera's plea that the government had failed to demonstrate that Ventura or Ocasio feared her but, rather, were willing participants in the spreading around of money. See id. at 483.

Pursuant to our direction, the case, on remand, was reassigned for the penalty phase of the proceedings. The new judge thereafter sentenced Rivera to a 48-month incarcerative term. This appeal followed.

Rivera, qua appellant, now maintains that various curtailments of her efforts to cross-examine witnesses violated her right to confront her accusers. See U.S. Const., amend. VI; Davis v. Alaska, 415 U.S. 308, 320 (1974). She points to no fewer than five occasions on which the trial court thwarted proposed lines of inquiry and posits that these inquires, if permitted, would have been highly probative of the fact that her accusers freely elected to make payments to her. Because the government's case was thin, her thesis runs, these abridgments of her Sixth Amendment rights

were distinctly prejudicial and require that her convictions be set aside.

But, there is a rub. Despite the fervor with which the appellant's arguments are presented, they are built on quicksand. We explain briefly why we reach that conclusion.

We start with the one ground of complaint that merits extended discussion. The appellant's trial counsel attempted to question Ocasio regarding payments that he had received from Ventura while he (Ocasio) was himself a government official (payments that allegedly occurred years before the inception of the charged conspiracy). Ocasio responded by invoking his right against self-incrimination. See U.S. Const., amend V. At that juncture, the appellant moved for a mistrial, but the district court denied the motion. The appellant assigns error to this ruling.

For purposes of precision, we begin this phase of our discussion by inquiring into what ground of appeal the motion for mistrial served to preserve. It is beyond peradventure that the motion preserved a claim of error as to the failure to grant a mistrial. It is less clear, however, whether the appellant can leverage the motion into a foundation for challenging the failure to take action with respect to Ocasio's previous testimony. After all, the appellant did not move to strike the testimony to that

point.  See, e.g., United States v. Sepulveda, 15 F.3d 1161, 1183 (1st Cir. 1993).

This is significant because remonstrances about rulings that have the effect of admitting evidence ordinarily must be preserved through either "a timely objection or motion to strike," Fed. R. Evid. 103(a)(1); see United States v. Meserve, 271 F.3d 314, 325 (1st Cir. 2001).  It is not self-evident, as a matter of logic, that a motion for mistrial qualifies.

Be that as it may, the denial of a motion for a mistrial is subject to review for abuse of discretion, see Sepulveda, 15 F.3d at 1184, and that ground of appeal plainly was preserved.  The same standard — abuse of discretion — governs appellate review of rulings admitting or excluding evidence, see United States v. Maldonado-Garcia, 446 F.3d 227, 231 (1st Cir. 2006), and in this instance the inquiries seem to overlap.  Given this similitude, we elect to treat this claim of error as preserved with regard to Ocasio's direct testimony being allowed to stand.

In the long run, winning that battle does not help the appellant to win the war.  The appellant effectively concedes that Ocasio had a colorable Fifth Amendment right to remain silent as to these earlier uncharged transactions (none of which were covered by his testimony on direct examination).  In United States v. Berrio-Londono, 946 F.2d 158 (1st Cir. 1991), we observed: "In determining whether a witness's refusal to answer questions posed during cross-

-5-

examination constitutes a denial of the defendant's confrontation rights . . . a distinction must be drawn between direct and collateral matters."  Id. at 160.

That principle possesses particular pertinence here.  If the evidence sheltered behind Ocasio's invocation of the Fifth Amendment was directly relevant, the appellant's rights may have been compromised by the earlier admission of Ocasio's testimony. See, e.g., United States v. Cardillo, 316 F.2d 606, 613 (2d Cir. 1963) (reversing convictions when key witness invoked Fifth Amendment midstream and "[t]he answers solicited might have established untruthfulness with respect to specific events of the crime charged").  If, however, the proffered line of questioning touched upon matters of only collateral import, the court had broad discretion to permit the direct testimony to stand while allowing Ocasio to invoke his right to silence on certain subjects raised by the cross-examiner.  See, e.g., Berrio-Londono, 946 F.2d at 161 (denying relief when the questions that the witness refused to answer on cross-examination served only to "gild[] the lily").  As long as the case at hand falls within the latter category, the motion for mistrial was properly denied.

The appellant's brief argues forcefully that the desired cross-examination was central to her defense.  Specifically, she remonstrates that had the jury been alerted to Ventura's history of doling out cash to public servants, it might have concluded that

the payments to the appellant were part of an established way of doing business rather than tribute extorted through threats of reprisal or under color of official right (the standard for Hobbs Act extortion, see United States v. Cruz-Arroyo, 461 F.3d 69, 73 (1st Cir. 2006)).

The chief difficulty with this argument is that it comes too late. That is to say, even though the denied line of cross-examination bears a direct relationship to the "willing participant" defense, that theory of defense was first clearly articulated in the appellant's second motion for a judgment of acquittal, filed six months after the jury had spoken.[1] It was not asserted at trial. There, the appellant's theory of defense was

---

[1]There are three places in the trial record that contain faint echoes of the "willing participant" defense. One is a brief allusion in closing argument suggesting that multi-millionaire developers had nothing to fear from the appellant. In context, however, the clear implication of this allusion was that these powerful men had little need for the appellant's assistance and, logically, would not have bothered to grease her palm. The second is a cryptic comment during a motion for a judgment of acquittal presented after the government's case was concluded, see Fed. R. Crim. P.29(a), in which counsel observed that the government had failed to introduce evidence of "fear or harm." The third is an attempt to ask Ocasio on cross-examination if he feared the appellant. After the court sustained an objection to this question, counsel, without argument or attempt to rephrase, ended his cross-examination. None of these can sustain the weight of an entire defense theory. At any rate, the sockdolager is that all three incidents occurred after the judge had denied the motion for mistrial and, therefore, could not have alerted him to what the appellant now says is the possible relevance of Ocasio's prior misconduct.

that she had not actually accepted any monies from either Ocasio or Ventura in return for access to government officials.

Not surprisingly, then, when the appellant's trial counsel argued the motion for mistrial, he did not suggest — or even so much as hint — that the thrust of his inquiry into matters pre-dating the conspiracy was to demonstrate a lack of fear on the part of the alleged victims. Rather, consistent with the defense strategy rolled out at trial, counsel argued that the denied line of cross-examination was necessary to impeach Ocasio's credibility by showing specific instances of bad character under Federal Rules of Evidence 404 and 608. At no time did counsel alert the court to the possibility that these prior bad acts might do double duty as evidence of willing participation.

The fact that a party has preserved an objection does not mean that, on appeal, the party can raise any conceivable ground in support of that objection. In the context of a ruling admitting evidence, we have explained that a "lack of specificity bars the party aggrieved by the admission of the evidence from raising more particularized points for the first time on appeal." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994). This logic is fully transferable to a ruling excluding evidence (or, as here, a ruling denying a motion for a mistrial premised on a refusal to allow a particular line of questioning). In either case, a contrary holding would enable a party to retrench after an adverse

-8-

jury verdict and ask an appellate court to view the trial judge's evidentiary rulings through a new and different lens. This sort of second-guessing is antithetic to the core purpose of procedural default rules. Thus, we treat the appellant's objection as preserved only as to the theory presented in support thereof to the trial court, namely, that the denied cross-examination would have been useful for impeachment purposes.

That effectively ends this aspect of the appeal. Impeachment through reference to a witness's prior conduct is often a paradigmatic example of a collateral pursuit. The admission of this type of evidence is always subject to the trial judge's sound discretion. See Fed. R. Evid. 608(b). On several prior occasions, we have found the exclusion of such evidence appropriate in the face of Sixth Amendment challenges. See, e.g., Berrio-Londono, 946 F.2d at 161; United States v. Barrett, 766 F.2d 609, 615 (1st Cir. 1985).

The testimony shielded by Ocasio's assertion of his Fifth Amendment privilege is of this genre. Despite the modest impediment that the exclusion of such testimony may have created, the appellant retained access to a variety of effective ways with which to attack Ocasio's credibility — not the least of which was

the fact that Ocasio had pleaded guilty to related charges and was hoping for a lenient sentence.[2] No more was exigible.

To be sure, the appellant argues that the unavailable testimony had added significance because it concerned criminal conduct with which Ocasio had not been charged, thus suggesting another potential reason for Ocasio to furnish testimony favorable to the government. Yet, that sort of argument has heretofore been tried and found wanting: an "inability to superimpose on [a witness's] admissions the possibility that [the witness] might also be concerned about punishment for other offenses can hardly be characterized as an abridgement of [the defendant's] right to effective cross-examination." Berrio-Londono, 946 F.2d at 161. Here, moreover, even though the lower court denied the appellant the opportunity to press Ocasio about the previous transactions, Ventura already had confirmed their occurrence.[3] Consequently, the

---

[2] In some contexts, a witness's credibility also may be undermined by the very exercise of his Fifth Amendment rights in the presence of the jury. See Berrio-Londono, 946 F.2d at 162. Here, however, the trial judge instructed the jury that Ocasio's claim of Fifth Amendment privilege was irrelevant.

[3] This single fact destroys any chance for the appellant to prevail on an argument that permitting Ocasio to invoke the Fifth Amendment was plain error when the "willful participant" defense is taken into account. As we have written, "[t]estimony that is cumulative in nature and limited in scope cannot constitute plain error." United States v. Bailey, 270 F.3d 83, 88 (1st Cir. 2001). In an effort to parry this thrust, the appellant asserts that, had Ocasio's claim of privilege been denied, she would have elicited testimony beyond the scope of Ventura's revelations. Appellant's Reply Br. at 4-5. Since the appellant's trial counsel neglected to make a contemporaneous offer of proof, we cannot credit this

jury had available to it all the information needed to discount Ocasio's credibility on the basis of his earlier unscrupulous dealings.

The Sixth Amendment assures a criminal defendant a right of effective cross-examination, not a right of unrestricted cross-examination. See United States v. Mulinelli-Navas, 111 F.3d 983, 987 (1st Cir. 1997). In this instance, the opportunity for effective cross-examination was not foreclosed by the mistrial ruling. Consequently, we conclude that the lower court acted well within its discretion in prioritizing the probative value of Ocasio's testimony over the necessary limitations on cross-examination concerning collateral matters that upholding his Fifth Amendment privilege entailed.

The remaining claims of error need not occupy us for long. In each and all of these instances, the appellant's trial counsel did not object, did not attempt to rephrase challenged questions, and did not make an offer of proof. See Fed. R. Evid. 103(a)(2); Fed. R. Crim. P. 51(b). Accordingly, these four assignments of error are procedurally defaulted.[4]

---

speculation. See Fed. R. Evid. 103(a)(2); see also United States v. Mulinelli-Navas, 111 F.3d 983, 992 (1st Cir. 1997) (elucidating cross-examiner's burden, in the face of an objection, to "adequately indicate[] to the district court the theory of defense she want[s] to pursue").

[4]In a letter submitted following oral argument, see Fed. R. App. P. 28(j), the appellant's counsel argues that our holding in United States v. Vega Molina, 407 F.3d 511 (1st Cir. 2005),

The procedural default rules, though sometimes harsh in their application, "are essential to the balanced and orderly functioning of our adversarial system of justice." United States v. Griffin, 818 F.2d 97, 99-100 (1st Cir. 1987). They deserve our allegiance here. These four claims are, therefore, reviewable only under the plain error standard — a standard that is notoriously difficult to satisfy.

The inquiry into plain error is elementary. The trial court sustained objections on relevancy grounds to questions anent (i) payments (unrelated to the appellant) allegedly made to high-ranking political figures; (ii) business deals between Ventura and Ocasio, including payments to the latter while he was in government service; and (iii) whether Ocasio actually feared the appellant. All of these lines of inquiry play into the appellant's theory on appeal — willing participation — but as we already have explained, that theory would not have been apparent to the nisi prius court. Finally, the district court denied the appellant the opportunity to press Ocasio, who had testified that he had no plea agreement, as to whether he had any type of agreement whatever with the prosecution.

suggests that, in cases raising Sixth Amendment concerns, there is no need to attempt to make an offer of proof or to rephrase questions in order to avoid procedural default. Vega Molina does not stand for so eccentric a proposition. In embracing that opinion, the appellant's counsel seems to have overlooked that the claim at issue there was "duly preserved." Id. at 522.

In none of these instances can the appellant vault the quadrat of hurdles incorporated in the plain error standard. To prevail on any of these forfeited claims of error, the appellant must make four showings: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

In no instance has the appellant satisfied even the first of these four prerequisites. It is easy to imagine that the queries at issue would have been confusing to the jury and — given the nature of the defense presented at trial — not particularly illuminating. At any rate, supplying context divests the four claims of error of even their initial patina of plausibility. For example, it may seem troubling at first blush that the appellant was not permitted to ask Ocasio if he feared her, but in the context of the cross-examination to that point it was not unreasonable to think that counsel was either repeating a question previously asked and answered or attempting to create the appearance of a contradiction where none existed.

Even were we to assume for argument's sake that any or all of these restrictions on cross-examination were erroneous, the appellant would not get very far. Based on our review of the record as a whole, these limitations neither affected the

-13-

appellant's substantial rights nor impaired the integrity of the proceeding.  The record makes manifest that the trial judge gave the appellant broad latitude to cross-question both of the government's star witnesses, and her trial counsel vigorously exploited that latitude.  And, finally, the judge afforded the appellant a full and fair opportunity to present the defense of her choosing to the jury.  The Sixth Amendment demands no more. Mulinelli-Navas, 111 F.3d at 987, 992.

To cinch matters, the fourth prong of the plain error test bars relief here.  Choices have consequences and, for aught that appears, the appellant made a strategic choice as to what line of defense might work at trial.  Fundamental fairness neither requires nor suggests that an appellate court relieve her of the consequences of that choice by reinterpreting trial proceedings in light of an alternate theory of defense first clearly articulated after the verdict.

The absence of any principled basis for a finding of plain error in the exclusion of evidence brings us to the last issue.  The district court sentenced the appellant during the twilight period between the Supreme Court's watershed decision in United States v. Booker, 543 U.S. 220 (2005) (rendering the federal sentencing guidelines advisory), and our explanatory dissertation in United States v. Jiménez-Beltre, 440 F.3d 514 (1st Cir. 2006) (en banc) (elucidating Booker and providing guidance to sentencing

courts on how to work with advisory guidelines).  The decision in Jiménez-Beltre required, among other things, that in the absence of exceptional circumstances — not present here — a sentencing court should begin its work by calculating the applicable guideline sentencing range.  See Jiménez-Beltre, 440 F.3d at 518 ("In most cases, this will mean that the district court will have to calculate the applicable guidelines range . . . before deciding whether to exercise its new-found discretion to impose a non-guidelines sentence."); see also United States v. Pho, 433 F.3d 53, 61 (1st Cir. 2006) (explaining that, post-Booker, "the guidelines remain part and parcel of the sentencing algorithm").

Here, the sentencing court did not pause to calculate the applicable guideline sentencing range.  Given the uncertainty that existed in the roiled wake of Booker, it is not surprising that the court lacked the clairvoyance to foresee the procedures that we would deem necessary for sentencing under an advisory guideline regime.  In light of this and other omissions, the government and the appellant — who agree on little else — both request that we vacate the sentence and remand to the district court for resentencing consistent with the steps limned in Jiménez-Beltre. The ends of justice counsel that we accommodate this sensible suggestion, and we do so.  We caution, however, that we take no view of the length of the sentence previously imposed; the district court remains free, in line with the dictates of Booker, Jiménez-

-15-

Beltre, and 18 U.S.C. § 3553, to impose a reasonable sentence above, below, or equal to that previously imposed.

We need go no further. Procedural lapses limit and define what may be reviewed on this appeal. For the most part, the appellant's claims of error are forfeit. The little that remains of those claims is untethered from the trial proceedings and, thus, insufficient to serve as a fulcrum for overturning the convictions. Withal, the appellant's sentence must be vacated.

**Affirmed in part, vacated in part, and remanded for resentencing**.