2009 ME 103

**STATE of Maine**

v.

**Frederick C. JOHNSON.**

Supreme Judicial Court of Maine.

Submitted On Briefs: July 8, 2009.
Decided: Oct. 8, 2009.

Sarah A. Churchill, Esq., Strike, Goodwin & O'Brien, Portland, ME, for Frederick Johnson.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] Frederick C. Johnson appeals from judgments of conviction of operating after habitual offender revocation (Class C), 29-A M.R.S. § 2557-A(1), (2)(B) (2008); refusing to stop for a law enforcement officer (Class E), 29-A M.R.S.

§ 2414(2) (2008); and driving to endanger (Class E), 29–A M.R.S. § 2413(1) (2008), entered in the Superior Court (Cumberland County, *Alexander, J.*) upon a jury verdict finding him guilty. At Johnson's trial, a witness for the State invoked her Fifth Amendment privilege against self-incrimination as to certain aspects of her testimony, and Johnson argues on appeal that his inability to cross-examine that witness regarding the privileged information deprived him of his confrontation rights under the Sixth Amendment of the United States Constitution. We affirm the judgments.

## I. BACKGROUND

[¶ 2]  On the evening of March 13, 2008, a Portland police officer was dispatched to Union Station Plaza to respond to a report that Johnson was operating a Dodge mini-van with a suspended license. On his way to Union Station Plaza, the officer confirmed through dispatch that Johnson's license was suspended and that he was an habitual offender. Upon his arrival, the officer spotted a parked vehicle matching the description given by dispatch and parked his cruiser some distance away to monitor the vehicle.

[¶ 3]  After about thirty minutes, the officer observed two individuals enter the minivan and then saw the minivan pull away. The officer was able to ascertain that the driver was male and the passenger was female, but due to the lack of light and his distance from the vehicle he could not make out the specific features of either individual. When the minivan pulled out of Union Station Plaza, the officer followed directly behind it. After several blocks, the officer activated his cruiser's blue lights and attempted to stop the minivan. The minivan pulled over and slowed down as if it were going to stop and then sped off at approximately sixty miles per hour in a twenty-five- to thirty-five-mile-per-hour zone, weaving in and out of traffic. The officer pursued the vehicle for less than one minute before calling off the chase out of a concern for public safety. Soon thereafter, the officer found the mini-van parked and abandoned near where the chase originated. A subsequent search for the occupants of the vehicle was unsuccessful.

[¶ 4]  The following evening, Lance Jones flagged down another Portland police officer and indicated that he had information about the high-speed chase. This officer referred the matter to the officer who had pursued the vehicle earlier, who met with Jones to get a statement. During this interview, Jones verified that he had made the call to dispatch the night before and that he had watched the events leading up to the chase from his vehicle parked near Union Station. Jones, who knew Johnson personally, identified him as the person who had been driving the mini-van the previous evening.

[¶ 5]  One week later, on March 21, 2008, Johnson was apprehended. Amy Cobb, who was with Johnson at the time of the arrest, was arrested on a separate matter. While Cobb was being finger-printed, she admitted to an officer that she was the passenger who had been in the minivan during the high-speed chase, and she said that Johnson had been driving. Cobb refused to give a written statement to that effect, however.

[¶ 6]  Johnson was charged with operating after habitual offender revocation (Class C), 29–A M.R.S. § 2557–A(1), (2)(B); refusing to stop for a law enforcement officer (Class E), 29–A M.R.S. § 2414(2); and driving to endanger (Class E), 29–A M.R.S. § 2413(1), and pleaded not guilty to all three counts. On December 2, 2008, two days before trial, the Deputy District Attorney and the officer

who had initially pursued Johnson met with Cobb at the jail. Cobb indicated that, on the night of the chase, she was using Suboxone, a drug similar to methadone, and that she had purchased the drug on the street without a prescription. She further indicated that the use of Suboxone did not impair her to the point that she could not identify Johnson as the driver of the minivan on the night in question.

[¶ 7] At trial, Cobb was called as a witness for the State and indicated that she intended to exercise her Fifth Amendment privilege against self-incrimination with regard to her drug use on the night of the chase, out of a concern that this testimony would expose her to a charge for a probation violation as well as new criminal charges. The State offered to enter into a stipulation regarding Cobb's drug use, based on the admissions Cobb had previously made to the police officer, and to the Deputy District Attorney. The stipulation provided:

> [O]ne, on December 2, 2008 [the Deputy District Attorney] and [the officer who had initially pursued the minivan] met with Amy Cobb at the Cumberland County Jail; two, Miss Cobb told [them] that at the time of this offense she was using Suboxone. Suboxone is a drug similar to Methadone. She said she bought this drug on the street and did not have a prescription for it. She said she used it because she was pregnant, and to go off Suboxone cold turkey could cause her to have a miscarriage. She said the use of this drug did not make her so high that she did not know who was driving the van on March 13, 2008.

Johnson's counsel raised the following objection:

> I think the problem here with allowing her to claim the Fifth Amendment privilege for some issues but allow her to testify to others is that it takes away from Mr. Johnson's right to confront and cross-examine her appropriately in front of the jury.... With all due respect to [the State's offer of a stipulation] I don't think that solves the problem because the jury doesn't hear it from Miss Cobb's mouth, they hear other things directly from her and can adduce her credibility on those issues. I think it's an all or nothing creature. If she is going to claim the fifth it goes to everything, and ... she can't be allowed to sort of pick and choose what she does and doesn't want to testify about.

The court sustained the claim of privilege over Johnson's objection, noting that Cobb's drug use related only to her credibility, "which could be argued based on the stipulation."

[¶ 8] Cobb ultimately identified Johnson as the driver of the minivan during direct examination. On cross-examination, Cobb admitted to having stated before that she did not know who was driving the van:

Q. And you have in fact told people that you were going to come to court and testify that you didn't know who was driving the van, correct?

A. Yeap.

Q. In fact you were telling people that as recently as November 18 of this year, correct?

A. Yeap.

Q. I have a letter here ... and is that in fact a letter you wrote to [a friend], correct?

A. Yeap.

Q. And in that letter you indicate, no matter what I am sticking to what I am saying at court, the truth, correct?

A. Yeap.

Q. And you also write in here that your testimony is going to be, I don't

know, I don't know what this sh\* \* is about, correct?

A. Yeap.

Q. I don't remember eight months ago, right?

A. Yeap.

Q. I was high and my brain is f\* \* \*ed, I can't remember yesterday, correct?

A. Yeap.

Q. And that's what you were telling everybody up until this week, correct?

A. Yeap.

Cobb further conceded on cross-examination that she was testifying in an attempt to avoid additional jail time. On redirect, Cobb testified that the letter to her friend was written as a means of expressing her love for Johnson.

[¶ 9] Lance Jones also testified and identified Johnson as the driver of the minivan on the night of the chase. Jones conceded that his initial report that Johnson was driving with a suspended license was motivated in part by a personal dislike for Johnson.

[¶ 10] The stipulation regarding Cobb's drug use was presented to the jury. A second stipulation that Johnson had notice that his license had been revoked was also presented, and a video of the chase taken by the officer's dashboard camera was admitted in evidence.

[¶ 11] The jury returned with a verdict of guilty on all three counts against Johnson. In light of the seriousness of the offense and Johnson's significant record of prior motor vehicle convictions, the court sentenced him to three years in prison, none suspended, and a $1,000 fine on the

operating after habitual offender revocation charge; concurrent six-month sentences for refusing to stop for a law enforcement officer and driving to endanger; and a thirty-day suspension of Johnson's license for driving to endanger. Johnson timely appealed from his convictions.

## II. DISCUSSION

[¶ 12] We are called upon in this appeal to consider the interplay between a witness's privilege against compelled self-incrimination and the right of a defendant in a criminal matter to confront the witnesses against him, both guaranteed by the United States Constitution and applied to the states via the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Malloy v. Hogan*, 378 U.S. 1, 6–12, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

[¶ 13] The Fifth Amendment to the United States Constitution declares that "No person … shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V., and applies to both criminal defendants and nonparty witnesses, *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924); *State v. Linscott*, 521 A.2d 701, 703 (Me.1987). The Confrontation Clause of the Sixth Amendment provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…." U.S. Const. amend. VI.

[¶ 14] Johnson does not challenge the propriety of Cobb's invocation of the privilege against self-incrimination. Rather, Johnson's principal argument on appeal[1]

---

1. Johnson also argues that the evidence presented at trial was insufficient to support his convictions. We conclude that, viewing the evidence in the light most favorable to the State, the jury could rationally have found each element of the crimes charged beyond a reasonable doubt. *See State v. Bickart*, 2009 ME 7, ¶ 46, 963 A.2d 183, 195.

is that the trial court's ruling, allowing Cobb to exercise the privilege as to some but not all of her testimony, deprived him of his constitutional right to confront and cross-examine Cobb regarding her ability to perceive the events of the night in question. According to Johnson, because he was unable to inquire directly of Cobb regarding how her drug use affected her ability to recall those events, Cobb's entire testimony should have been disallowed.

[¶ 15] The United States Supreme Court has held that the Confrontation Clause guarantees a criminal defendant "an adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). Thus, the protections of the Sixth Amendment are not absolute and ensure "a right of effective cross-examination, not a right of unrestricted cross-examination." *United States v. Rivera Rangel*, 466 F.3d 158, 163 (1st Cir.2006). It follows that not every restriction on cross-examination occasioned by the assertion of the privilege against self-incrimination amounts to a Confrontation Clause violation. The First Circuit has succinctly stated the applicable analysis in these circumstances:

> In determining whether a witness's refusal to answer questions posed during cross-examination constitutes a denial of the defendant's confrontation rights ... a distinction must be drawn between direct and collateral matters.... If the evidence sheltered behind [the] invocation of the Fifth Amendment was directly relevant, the appellant's rights may have been compromised by the earlier admission of [the witness's] testimony. If, however, the proffered line of questioning touched upon matters of only collateral import, the court [has] broad discretion to permit the direct testimony to stand while allowing [the witness] to

invoke his right to silence on certain subjects raised by the cross-examiner.

*Rivera Rangel*, 466 F.3d at 161 (quotation marks and citations omitted).

[¶ 16] Applying this principle, we have twice held that the assertion of the privilege against self-incrimination did not infringe upon a defendant's confrontation rights when applied to collateral matters involving the impeachment of the witness's direct testimony. *See State v. Brown*, 321 A.2d 478, 485 (Me.1974); *State v. Langley*, 242 A.2d 688, 690–91 (Me.1968). In *Brown*, we held that the assertion of the privilege regarding the prior, unrelated criminal activity of the witness amounted to a "minimal restriction[ ] on the scope of cross-examination as to the collaterally relevant, but nonetheless privileged, subject matter." 321 A.2d at 481, 485. In *Langley*, we concluded that a claim of privilege as to testimony regarding the prior sexual relationship between the witness and the defendant, a man who was not her husband, concerned "matters collateral and unrelated to the subject matter covered by the witness in her direct examination" and thus did not infringe upon the defendant's constitutional right to cross-examination. 242 A.2d at 690.

[¶ 17] Here, Cobb's assertion of the privilege as to her use of Suboxone on the evening in question, although collaterally relevant as impeachment evidence, is also directly relevant to the matters that were the subject of her direct testimony. Specifically, Cobb's drug use was directly related to her ability to perceive the events surrounding the high-speed chase as well as her ability to accurately identify Johnson as the driver of the vehicle. Cobb's identification of Johnson as the driver was the primary purpose of her direct testimony and was part of the State's proof on all three charges against Johnson. Through Cobb's assertion of the privilege, Johnson

was prevented from inquiring directly into Cobb's actual mental and physical state and her reliability as an eyewitness at the time of the commission of the crime. As a result, Johnson was unable to fully test the veracity or accuracy of her direct testimony or the accuracy of the stipulation that the use of Suboxone "did not make [Cobb] so high that she did not know who was driving the van on March 13, 2008." In this circumstance, we conclude that this restriction on cross-examination amounted to a violation of Johnson's Sixth Amendment confrontation rights.

[¶ 18] The limitation of cross-examination in contravention of the Sixth Amendment is, however, subject to a harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); M.R.Crim. P. 52(a). For errors involving constitutional rights, a reviewing court conducting a harmless error analysis must be satisfied that the record as a whole demonstrates beyond a reasonable doubt that the error did not affect the substantial rights of the defendant or contribute to the verdict obtained. *See Van Arsdall*, 475 U.S. at 681, 684, 106 S.Ct. 1431; *State v. Tremblay*, 2003 ME 47, ¶ 16, 820 A.2d 571, 576. In this particular context, the factors relevant to this inquiry include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431.

[¶ 19] On the record before us, we conclude that the error was harmless. In addition to Cobb's eyewitness testimony, the State presented the testimony of Lance Jones, who independently identified Johnson as the driver of the vehicle during the high-speed chase. Furthermore, Johnson was able to cross-examine Cobb regarding her motivation for testifying as well as her previous assertions that her memory of the night in question was impaired by drug use and that, as a result, she intended to testify that she did not know who was driving the minivan during the high-speed chase. Given Jones's identification of Johnson, the broad range of permitted cross-examination, and the stipulation establishing that Cobb was using drugs on the night of the chase, we are satisfied that the error neither deprived Johnson of substantial rights nor contributed to the jury's guilty verdicts.

The entry is:

Judgments affirmed.