# United States Court of Appeals
## For the First Circuit

No. 05-2374

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL TURBIDES-LEONARDO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Selya, Circuit Judge.
Cyr and Stahl, Senior Circuit Judges.

William W. Fick and Foley Hoag LLP on brief for appellant.
Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson
Pérez-Sosa and Thomas F. Klumper, Assistant United States
Attorneys, on brief for appellee.

November 14, 2006

**SELYA**, **Circuit Judge**.    Defendant-appellant Rafael Turbides-Leonardo (Turbides) pleaded guilty to one count of illegally reentering the United States following an earlier deportation after his conviction for an aggravated felony. In this sentencing appeal, Turbides attacks both the district court's calculation of his guideline sentencing range (GSR) and the reasonableness of his 48-month sentence.    After careful perscrutation, we affirm.

## I.  BACKGROUND

Turbides is a native and citizen of the Dominican Republic.    In 1999, the Immigration and Naturalization Service deported him from the United States following his 1997 felony conviction in the Puerto Rico courts.    He illegally reentered the United States sometime between July 2003 and July 2004.    On January 31, 2005, the authorities apprehended him as part of an ongoing investigation into drug smuggling, narcotics trafficking, and money laundering.    An indictment for illegal reentry followed.    See 18 U.S.C. § 1326.

Once Turbides pleaded guilty to the charge, a probation officer prepared a presentence investigation report (PSI Report). The PSI Report contemplated a total offense level (TOL) of 21, a criminal history category of II, and a GSR of 41-51 months.    In arriving at the TOL, the probation officer factored in a 16-level enhancement pursuant to USSG §2L1.2(b)(1)(A) (2004).    The

enhancement rested upon a determination that Turbides's 1997 conviction, which carried a sentence in excess of 13 months, constituted a conviction for a drug trafficking offense within the purview of the aforementioned sentencing guideline.

Turbides did not object to this determination, nor did he protest any of the other guideline calculations limned in the PSI Report. He did, however, beseech the sentencing court to deviate downward from the GSR. The court demurred and imposed a 48-month incarcerative term. This timely appeal ensued.

## II. ANALYSIS

In this forum, the appellant calumnizes both the 16-level enhancement and the overall sentence. We discuss these claims of error sequentially.

### A. **The Enhancement**.

USSG §2L1.2 directs a 16-level increase in offense level for illegal reentry cases "[i]f the defendant previously was deported . . . [after] a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months . . . ." The commentary to this guideline, set forth in the margin,[1] defines the term "drug trafficking offense" broadly. The

_____

[1]The commentary states:

[A]n offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture,

PSI Report recommended such an enhancement on the ground that the appellant had committed the charged crime after an earlier "conviction for a drug trafficking offense."

In support of that recommendation, the PSI Report stated that, in 1997, Turbides, while represented by counsel, had been convicted in the Puerto Rico Superior Court of a controlled substance violation. Although the PSI Report explained that details concerning the prior conviction were not readily available, it described the underlying offense as a possession with intent to distribute violation, which had been reduced to two counts of "conspiracy w/intent to dist[ribute] cocaine." The PSI Report further noted that, on December 15, 1997, the appellant received a sentence of "4 years in prison as to each count to be served concurrently with each other."

The appellant offered no objection either to the PSI Report's description of his prior conviction or to its proposed 16-level enhancement. At sentencing, the district court, again without objection, embraced the PSI Report's characterization of the prior conviction as a drug trafficking offense, adopted the suggested GSR, and imposed a within-the-range sentence (48 months).

Before us, the appellant sings a significantly different tune. He argues, for the first time, that there was no information

import, export, distribute, or dispense. USSG §2L1.2, cmt. (n.1(B)(iv)).

-4-

in the district court record concerning his specific offense conduct in relation to the 1997 conviction. He adds that the Puerto Rico statute undergirding that conviction encompasses not only conduct that would qualify as drug trafficking but also conduct that would not qualify;[2] and that the district court treated his prior conviction as a conviction for a drug trafficking offense without examining either the court documents in the earlier case or the elements of the applicable Puerto Rico statute. Building on this foundation, he asserts that, absent an inquiry into the record of conviction, his prior offense — though admittedly an aggravated felony — could not be deemed a drug trafficking offense. Thus, it should have carried no more than an 8-level enhancement, see USSG §2L1.2(b)(1)(C), which would have resulted in a GSR of 15-21 months and, presumably, a more lenient sentence.

The appellant concedes that he neither objected to the PSI Report's guidelines calculations nor favored the lower court with the argument that he now stitches together. He nonetheless implores us to treat the argument as forfeited, not waived, and

---

[2]The principal statute of conviction, P.R. Laws Ann. tit. 24, § 2401, criminalizes not only paradigmatic drug trafficking offenses (e.g., distribution, dispersal, and possession with intent to distribute of controlled substances) but also actions that are less obviously drug trafficking offenses (e.g., concealment of a controlled substance). The other statute mentioned in the PSI Report, P.R. Laws Ann. tit. 24, § 2406, refers to attempts or conspiracies to commit offenses such as those limned in section 2401.

therefore to review it for plain error. See United States v. Olano, 507 U.S. 725, 733-34 (1991) (differentiating between waivers and forfeitures); United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) (same). The government disagrees; it sees the appellant's serial failures as a waiver, which would preclude him from raising the argument on appeal. See Rodriguez, 311 F.3d at 437.[3]

There is a powerful case for waiver here. See D.P.R.R. 132 (stating that objections to a PSI Report must be filed "within 14 days of its disclosure" and warning that, absent a finding "that the basis for the objection was not reasonably available prior to th[at] deadline," the affected party "waives any objection to the [report] by failing to comply with this rule"). This rule cries out for enforcement: a defendant who eschews a warrantable objection to a conclusion reached in a presentence report lulls both the prosecution and the sentencing court into what will prove

---

[3]In Rodriguez, we wrote:

> A party waives a right when he intentionally relinquishes or abandons it. This is to be distinguished from a situation in which a party fails to make a timely assertion of a right — what courts typically call a "forfeiture." The difference is critical: a waived issue ordinarily cannot be resurrected on appeal, whereas a forfeited issue may be reviewed for plain error.

311 F.3d at 437 (citations omitted).

to be a false sense of security if he is later allowed to do an about-face.

This case is a good example: given the appellant's ready acquiescence in the characterization of his earlier conviction as a drug trafficking offense, few prosecutors would have felt a need to bring in the original record of conviction and few judges would have felt a responsibility to probe the point more deeply. As we observed in United States v. Morillo, 8 F.3d 864, 872-73 (1st Cir. 1993), "[a] defendant who accepts the probation department's configuration of the sentencing record without contesting the facts set forth in the PSI Report can scarcely be heard to complain when the sentencing court uses those facts in making its findings." All things considered, we think that what transpired here amounted to a waiver.

Even were we to assume that the appellant's tergiversation comprised no more than a forfeiture, his late-blooming argument would not flourish in the hothouse of plain error review. Such review "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). As we explain below, the appellant cannot carry the burden that this standard of review imposes.

To put the appellant's claim of error into perspective, we must take a step backward. The Supreme Court has devised a categorical approach for determining whether a prior conviction subsumes a predicate offense. See Taylor v. United States, 495 U.S. 575, 600 (1990); see generally Conteh v. Gonzales, 461 F.3d 45, 53 (1st Cir. 2006). The categorical approach consists of two steps. See Taylor, 495 U.S. at 602.

Where a violation of the statute underlying the prior conviction necessarily involves every element of an enumerated predicate offense, the mere fact of conviction establishes that the prior conviction qualifies as a conviction for the predicate offense. Where, however, the underlying statute spans, but is broader than, the elements of the enumerated offense (i.e., where the statute encompasses both conduct that would constitute a predicate offense and conduct that would not), the prior conviction qualifies as a conviction for the predicate offense only when "the jury was actually required to find all of the elements" of the predicate offense. Id. This same approach applies, with variations necessitated by context, to cases in which the prior conviction resulted from a guilty plea rather than a jury verdict. See Shepard v. United States, 544 U.S. 13, 19-20 (2005).

At the second step of the Taylor analysis, an inquiring court cannot retry the original case but, rather, must restrict its probing to the record of conviction. See Taylor, 495 U.S. at 602;

Conteh, 461 F.3d at 53. In a tried case, the record of conviction will consist mainly of the charging document, jury instructions, and verdict form; in the guilty plea context, the record of conviction will consist mainly of the charging document, written plea agreement, and transcript of the change-of-plea colloquy. See Shepard, 544 U.S. at 26. In all events, the information used to characterize the putative predicate offense must be "confined to the records of the convicting court." Id. at 23. Thus, a presentence report in a subsequent case ordinarily may not be used to prove the details of the offense conduct that underlies a prior conviction. See, e.g., United States v. Sanders, 404 F.3d 980, 989 (6th Cir. 2005); United States v. Pimentel-Flores, 339 F.3d 959, 968 (9th Cir. 2003); see also Conteh, 461 F.3d at 59 (applying the Taylor-Shepard analysis in the immigration context).

In light of the appellant's agreeable acquiescence in the characterizations and computations contained in the PSI Report, it is difficult to find any error. See, e.g., United States v. Arrieta-Buendia, 372 F.3d 953, 955-56 (8th Cir. 2004) (explaining that, absent an objection, a PSI Report may be a permissible source of information about a prior conviction for sentence enhancement purposes). Under the circumstances, the district court's approach seems perfectly reasonable. And, even were we to assume, for the sake of argument, that the sentencing court committed clear or obvious Shepard error, see Shepard, 544 U.S. at 19-20, that would

-9-

only get the appellant halfway home: a party asserting plain error must carry the devoir of persuasion as to all four elements of the formulation. United States v. Padilla, 415 F.3d 211, 218 (1st Cir. 2005) (en banc); United States v. Vega Molina, 407 F.3d 511, 521 (1st Cir. 2005). Here, regardless of how we resolve the first two elements, the appellant stumbles over the third.

Under plain error review, the third required showing is that the claimed error affected the complaining party's substantial rights. See Duarte, 246 F.3d at 60. The Supreme Court has explained that "in most cases [this phrase] means that the error must have been prejudicial: it must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734. This prejudicial effect on the outcome of the proceeding must be "substantial and injurious." United States v. Dominguez Benitez, 542 U.S. 74, 81 (2004) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, the complaining party must show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." Padilla, 415 F.3d at 221 (quoting Dominguez Benitez, 542 U.S. at 81). This means that, in a sentencing appeal, a defendant who presses a forfeited claim of error must limn circumstances indicating a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence. United States v. Antonakopoulos, 399 F.3d 68, 78 (1st Cir. 2005). Put another way,

-10-

the "defendant must . . . satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." Id.

The appellant cannot surmount this hurdle. His argument, taken in its most attractive light, presents us with an unknown variable: the contents of the record of the prior conviction. He does not claim that this record, if obtained, would show that his prior offense was other than a drug trafficking offense; he does not claim that the record would be either ambiguous or inscrutable as to this point; and, finally, he nowhere asserts that, factually, his prior offense conduct would fall outside the guidelines' definition of a drug trafficking offense. Rather, he claims only that, under the statute of conviction, see supra note 2, his prior offense — about which we know next to nothing — would not necessarily encompass all the elements needed to constitute a drug trafficking offense under USSG §2L1.2.

At bottom, then, we are left to guess whether, had a timely objection sparked a thorough examination of the record of conviction, the district court would or would not have found that the prior conviction qualified as a conviction for a drug trafficking offense. With no articulation, let alone substantiation, of what the record of conviction might reveal, there is no way for the appellant to show a reasonable probability that

-11-

he would be better off from a sentencing standpoint had the district court not committed the claimed <u>Shepard</u> error.  It follows inexorably that the appellant has not satisfied the third prong of the plain error test.[4]  <u>See</u> <u>Jones</u> v. <u>United States</u>, 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."); <u>Padilla</u>, 415 F.3d at 221 (holding that where the defendant could not show a likelihood that he was worse off because of the alleged sentencing error, he perforce could not show that the error affected his substantial rights).

### B.  <u>Reasonableness</u>.

The appellant has a fallback position.  He maintains that, even if the district court correctly calculated the GSR, his 48-month sentence is unreasonable.  Relatedly, he suggests that the district court erred in not explaining why that long a sentence was warranted.

In <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005), the Supreme Court rendered the sentencing guidelines advisory. <u>See</u> <u>id.</u> at 245.  We review sentences imposed under an advisory guidelines regime for reasonableness, regardless of whether they fall inside

---

[4]Since a defendant must carry the devoir of persuasion on all four aspects of plain error review, <u>Padilla</u>, 415 F.3d at 218, this failing renders it unnecessary for us to consider the fourth prong of the test.

or outside the applicable GSR.  See United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

We start this aspect of our analysis with a bow to the statutory requirement that a sentencing court must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c).  This directive does not mean that the sentencing court's explanation need be precise to the point of pedantry.  While the court ordinarily should identify the main factors upon which it relies, its statement need not be either lengthy or detailed.  United States v. Navedo-Concepción, 450 F.3d 54, 58 (1st Cir. 2006).  By the same token, a sentencing court is not required to address frontally every argument advanced by the parties, nor need it dissect every factor made relevant by 18 U.S.C. § 3553 "one by one, in some sort of rote incantation, when explicating its sentencing decision."  United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).  Even silence is not necessarily fatal; "a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did."  Jiménez-Beltre, 440 F.3d at 519.

Of particular pertinence here, we have recognized that sentences that fall inside a properly calculated guideline sentencing range require a lesser degree of explanation than those that fall outside the guideline sentencing range (whether above or below).  United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006).

-13-

Accordingly, a district court's statement of reasons for imposing a within-the-range sentence need not be as cogent as its reasons for imposing an outside-the-range sentence. Cf. id. (explaining that "the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification . . . the judge must offer" (citation omitted)).

This is consistent with pre-Booker practice. In that era, when the guidelines calculations were correct, the sentence imposed was within the computed range, and the range encompassed less than a 24-month spread, a sentencing court was not obliged to give any reasons for imposing a within-the-range sentence. See, e.g., United States v. Mansur-Ramos, 348 F.3d 29, 31 (1st Cir. 2003) (citing 18 U.S.C. § 3553(c)). After Booker, when those preconditions are satisfied a district court arguably is not required to cite any reasons for imposing a within-the-range sentence. See Jiménez-Beltre, 440 F.3d at 519 (suggesting that, post-Booker, 18 U.S.C. § 3553(c) remains in full force); see also Booker, 543 U.S. at 258-65 (striking down certain provisions of the Sentencing Reform Act but leaving section 3553(c) intact). We say "arguably" because, in this case, we need not answer that interesting question. For now, it suffices that the sentencing transcript and the PSI Report make the district court's rationale for the length of the sentence sufficiently clear.

Beyond a lack of explanation, the appellant's campaign against the reasonableness of his sentence is waged on three fronts. None of his forays is persuasive.

First, the appellant claims that the district court violated the parsimony principle — the statutory directive that sentences should be no higher than necessary to achieve the statutory goals of sentencing. See 18 U.S.C. § 3553(a); see also United States v. Scherrer, 444 F.3d 91, 95 (1st Cir. 2006) (en banc). This claim is baseless. It will be the rare case in which a within-the-range sentence can be found to transgress the parsimony principle.

In all events, the sentencing court in this case acknowledged its awareness of the parsimony principle during the disposition hearing, stating that it had taken section 3553(a) into account in arriving at the 48-month sentence. On these facts, no more is exigible.

Next, the appellant asserts that the district court failed to consider several mitigatory arguments that he made at sentencing. The record does not bear out this assertion. At the disposition hearing, the district court began appropriately by calculating the GSR. See United States v. Rivera Rangel, ___ F.3d ___; ___ (1st Cir. 2006) [No. 06-2042, slip op. at 14-15]; Jiménez-Beltre, 440 F.3d at 518. The court then addressed, albeit briefly, the arguments advanced by the appellant. We discern no failure of

consideration. After all, with respect to a sentencing court's duty of explanation, brevity is not to be confused with inattention.

Finally, the appellant argues that the district court failed to appreciate that he posed a reduced risk of recidivism. In mounting this self-serving argument, the appellant theorized that because he was an older person (49) who had learned a painful lesson, he would never again return to the United States for fear of what might ensue. While the district court did not address this theorem directly, the record permits a commonsense inference that the court was unimpressed.

The appellant's illegal entry followed a recent deportation, which indicates that he was aware of some of the potential consequences of illegal entry, yet, persisted in returning. On these facts, it suffices that the district court's unwillingness to accept this argument was both plausible and defensible. See Dixon, 449 F.3d at 204; Jiménez-Beltre, 440 F.3d at 519.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reject the appellant's assignments of error.

**Affirmed**.