LIPEZ, Circuit Judge,
concurring.
A defendant whose sentence is enhanced because of violent crimes he committed in the past will face substantially more time in prison than someone without a record of violence. Although I do not question sentencing enhancements for defendants with violent criminal histories, we must ensure that aggravated penalties are imposed only when the criminal histories justify them. Here, appellant challenges the district court’s unsupported assumption that his conviction under a “divisible” statute was in fact for a crime of violence. I reluctantly agree with my colleagues that First Circuit precedent requires us to reject appellant’s claim. However, our case law on how to evaluate plain error in this context is inconsistent, and it cannot be reconciled with the Supreme Court’s decision in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). I therefore urge our court to rehear this case en banc so that we may closely exam *851 ine, and fairly resolve, an important and complex question of law: how does the government’s burden to establish that a conviction under a divisible statute qualifies as a predicate offense intersect with a defendant’s burden to show plain error?
Under the analysis described in the majority opinion, appellant can satisfy the prejudice prong of the plain error test only if he proves that, but for the sentencing court’s improper reliance on his Article 3.1 conviction, it is reasonably probable that he would have received a lesser sentence. As a practical matter, that approach switches to defendants the obligation the Supreme Court imposed on the government to produce specific court records proving that a conviction under a divisible statute qualifies as a predicate offense. In so doing, the approach creates a real risk of longer prison terms than are justified by defendants’ criminal histories. As other circuits have recognized, however, that potential harm can be easily avoided, with minimal burden on the sentencing court. When the court erroneously relies on a conviction whose character cannot be determined without Shepard-approved documents, the defendant’s sentence must be vacated and the case remanded for resentencing. The government will then ordinarily have the opportunity to substantiate that the conviction was for an offense that qualifies as a predicate for enhancement. If the government cannot do so, the enhancement is impermissible.
As I explain below, this modest relief follows as a matter of logic and fairness from correct application of the plain error test in this context. Indeed, with a full understanding of the underlying principles, one can only, conclude that the prejudice analysis articulated in our precedent — requiring the defendant to disprove his eligibility for a sentence enhancement — is misguided. Our court should convene en banc to remedy this serious problem.
I.
A. Legal Background
As my colleagues explain well, when a court seeks to enhance a defendant’s sentence based on a prior conviction under a “divisible” statute — i.e., where the statute criminalizes different types of conduct, only some of which may support the enhancement — the court applies the so-called modified categorical approach to determine which version of the crime underlies the defendant’s conviction. Descamps v. United States, — U.S. —, 133 S.Ct. 2276, 2283-84, 186 L.Ed.2d 438 (2013); see also United States v. Ramos-González, 775 F.3d 483, 505 (1st Cir.2015) (describing a “divisible statute” as one that “sets forth one or more elements of a particular offense in the alternative”) (quoting United States v. Fish, 758 F.3d 1, 6 (1st Cir.2014)). Frequently, as in this case, the enhancement depends on whether the challenged prior conviction was for a “crime of violence.” [8] See, e.g., Ramos-González, 775 F.3d at 504-05. If a statute criminalizes both violent and non-violent conduct, “the sentencing court is permitted to consult a limited set of ‘approved records’ to determine which ... provided the basis for the conviction.” Id. at 505 (quoting United States v. Carter, 752 F.3d 8, 19 (1st Cir.2014)). The permissible records consist primarily of charging documents, plea agreements, transcripts of plea colloquies, *852 jury instructions, and verdict forms. Id.; see also Shepard, 544 U.S. at 26, 125 S.Ct. 1254 (describing the acceptable records, often described as “Shepard materials”). If the records show that the defendant was not convicted of a crime containing the requisite elements of violence — or if the records do not reveal the nature of the crime — the conviction may not.be used to enhance his current federal sentence. See United States v. Dávila-Félix, 667 F.3d 47, 57 (1st Cir.2011).
At sentencing, the burden to produce the documents that reveal (or not) the nature of the proffered conviction is on the government. Dávila-Félix, 667 F.3d at 55 (“The Government bears the burden of establishing that a prior conviction qualifies as a predicate offense for sentencing enhancement purposes.”). Hence, if the government does not demonstrate that the defendant’s conviction was for a variant of the crime that satisfies the crime-of-violence definition, it is error for the court to treat that conviction as a predicate for sentencing enhancement purposes. This is so whether the documents show the crime to be of the nonviolent type or if the documents do not reveal the particular version of the crime underlying the conviction. See United States v. Davis, 676 F.3d 3, 8 (1st Cir.2012) (“If, after examination of these permissible documents, ‘it is impossible to tell whether the defendant was convicted of a violent or non-violent offense,’ the conviction may not serve as a predicate offense.”) (quoting United States v. Holloway, 630 F.3d 252, 257 (1st Cir.2011)).
The complexity arises if the defendant fails to challenge the sentencing court’s reliance on such a conviction, and raises an objection for the first time on appeal. We treat such a claim as forfeited and give it only plain error review.[9] Under that standard, the defendant “bear[s] the ‘heavy burden’ of showing that the error was clear or obvious, and that it both affected his substantial rights and ‘seriously impaired the fairness, integrity, or public reputation of judicial proceedings.’ ” Ramos-González, 775 F.3d at 499 (quoting United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir.2013)).
To perform this inquiry, we need to identify the “error” before we can deter-, mine if it is clear or obvious, and prejudicial. Focusing on the Puerto Rico statute under which the defendant was convicted, my colleagues explain that we may find plain error only if we are “confident that none of the distinct offenses set forth in that law” would qualify as a crime of violence. Op. at 845. Otherwise, they say, an error in using the conviction as a predicate for enhancement would not be clear or obvious.' Moreover, drawing on our precedents, they conclude that the defendant cannot satisfy the prejudice prong of the plain error inquiry unless he shows “ ‘a reasonable probability that, but for the error, the district court would have imposed a different, more favorable sentence.’ ” Op. at 847 (quoting Davis, 676 F.3d at 10, which in turn quoted United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir.2006)). To accomplish this *853 showing of prejudice, the defendant, in effect, is required to produce Shepard materials revealing that his conviction was for a non-violent offense.
The animating principle of the modified categorical approach, however, is that enhanced sentencing is improper unless the government proves that the defendant’s criminal history justifies such severe punishment. Error occurs, therefore, whenever a sentencing court increases a term of imprisonment based on a predicate conviction under a divisible statute in the absence of Shepard-approved proof that the conviction was for a qualifying variant of the crime. For that reason, the defendant’s burden in the trial court is simply to note the absence of proof, not to proffer the supporting documents to disprove his eligibility for an enhancement. Under the approach my colleagues draw from prior cases, Serrano’s failure to make that simple objection to the lack of proof transferred the duty of production to him on plain error review.[10] '
Although my colleagues understandably follow a path set out in prior eases, this dramatic shift of responsibility is unfair and wrong. I therefore first review why I view our precedent as flawed and incompatible with Supreme Court precedent before elaborating on what I believe is the proper analysis.
B. The Varying Paths of our Prior Cases
Our cases do not present a uniform approach for analyzing plain error in the context of a claim that the district court improperly lengthened a sentence based on the defendant’s prior conviction under a divisible statute. In some instances, we have held the government accountable for the absence of evidence in the record. See, e.g., Ramos-González, 775 F.3d at 506-08 (vacating sentence that included career offender status because the records submitted by the government did not show the nature of defendant’s conviction under a divisible statute); Dávila-Félix, 667 F.3d at 57 (concluding that, “on the record before us, the Government has not met its burden of proving that [defendant’s] prior drug conviction qualified as a career offender predicate”); United States v. Torres-Rosario, 658 F.3d 110, 117 (1st Cir.2011) (noting that, “[o]n remand, the government remains entitled tp establish the [basis for the sentencing enhancement] by showing that one of the assault and battery convictions was a crime of violence” (citation omitted)). In the latter two cases, however, the courts identified reasons why the defendants understandably failed to make an earlier challenge to the depiction of their convictions as qualifying predicates, thereby articulating justifications for remanding the case for resentencing notwithstanding the defendant’s heavy burden on plain error review.[11] In Ramos-González, the government already had had multiple opportunities to prove career-offender status, and the panel declined to give the government a third chance. 775 F.3d at 508.
In other cases involving divisible statutes, panels of this court have held the defendants accountable for the absence of *854 supporting documents in the record despite the government’s burden to produce such records. See, e.g., Davis, 676 F.3d at 9-10; Turbides-Leonardo, 468 F.3d at 39-40. In these cases, the panels bypassed explicit identification of the error and— ostensibly addressing the prejudice prong of the plain error standard — articulated the requirement relied on by my colleagues: a defendant must show that, absent the error, he probably would have received a shorter sentence. Davis, 676 F.3d at 10; Turbides-Leonardo, 468 F.3d at 39.
As I explain below, the failure to confront the nature of the error is a threshold flaw in the Turbides-Leonardo and Davis assessments of plain error, and the mistake results in a misdirected prejudice analysis. As my colleagues recognize, the plain error analysis in Turbides-Leonardo was dicta, given the panel’s statement that, “[a]ll things considered, we think that what transpired here amounted to waiver.” 468 F.3d at 38.[12] In Davis, the panel followed the Turbides-Leonardo dicta without analyzing its legal foundation, perhaps because the defendant’s conduct there manifested waiver.[13] Davis complained that he should not be sentenced as a career offender, but he never argued that career-offender status was improper because the district court failed to determine the nature of the pertinent predicate conviction. See 676 F.3d at 6 n. 2, 7, 10 n. 7. In fact, appellate counsel twice sought to withdraw oh the ground that he “ ‘could not discern a non-frivolous basis for appeal.’ ” Id. at 6 n. 2 (quoting counsel’s brief). The panel refused those requests and directed counsel to address the plain error standard. .Counsel, however, did not submit briefing on plain error.and, “when questioned at oral argument regarding any potential prejudice to Davis based on the district court’s failure to undertake the categorical approach or to examine the character of Davis’s 2006 assault and battery conviction, Davis’s counsel could not point to any.” Id. at 10 n. 7.
In these circumstances, I can understand how the Davis panel came to rely on the Turbides-Leonardo approach to plain error without closely examining it or explicitly acknowledging it as dicta. Treating Davis’s claim as forfeited rather than waived was generous and, given that Davis did not raise the district court’s failure to apply the modified categorical approach even on appeal, the panel had no reason to probe deeply into the Turbides-Leonardo articulation of the inquiry. Here, by contrast, Serrano develops his claim that the district court erred by counting his domestic violence offense as a predicate crime of violence, asserting, inter alia, that some crimes under Article 3.1 “clearly do not involve the use of violent force.” Br. at 23. Nonetheless, because Davis applies the *855 plain error test to a scenario it labels as forfeiture, it appears to be binding precedent on the application of the plain error test where, as here, there are no distinguishing facts like those in Ramos-González, Dávila-Félix, or Torres-Rosario.
Thp feet remains, however, that our cases fail to deal consistently with the government’s initial burden of proof in the plain error context. Where the government was required to retain the burden to prove the nature of the defendant’s conviction, the courts relied on particular circumstances — a change in the law, the convictions’ non-essential role in the prior sentencing, or the government’s multiple prior attempts — to explain the defendants’ default or find the burden unmet. In the two instances where the burden was switched from the government to the defendant, the courts dealt explicitly or de facto with an intentional relinquishment of the defendant’s rights — a waiver — and avoided the question of what error the court committed. We have not examined how, or if, these cases may be reconciled with each other and whether they achieve the objectives of the modified categorical approach. Furthermore, the uneven treatment within our own circuit is reflected in a conflict among the circuits. Compare, e.g., United States v. Dantzler, 771 F.3d 137, 149 (2d Cir.2014) (“The absence of an objection will not relieve the Government of its burden of proving through Taylor— and Shepard-approved sources that the ACCA enhancement applies.”), with, e.g., United States v. Zubia-Torres, 550 F.3d 1202, 1209 (10th Cir.2008) (“By failing to present any evidence that relevant documents would indicate his conviction was not for [a qualifying predicate offense], the defendant has failed to meet his burden under the third prong of plain error review.”).
In sum, we lack a thoughtful, uniform analysis for assessing plain error when a defendant claims that his sentencing enhancement was improperly based on an unexamined conviction under a divisible statute. Our court, en banc, should take the opportunity to develop such an analysis in this case.
C. The Correct Approach
To properly conduct the plain error inquiry, a court must have a correct understanding of the error at issue. As described above, some of our cases have sidestepped the question of error to focus on the question of prejudice. In so doing, however, those courts performed an analysis premised on a misidentification of the error, which leads them to cast aside the government’s burden of proving the basis for an enhancement. In Turbides-Leonardo and Davis, the panels focus on the enhanced sentence, and consequently evaluate prejudice by asking the usual question we ask when sentences are reviewed for plain error: is it reasonably probable that, but for the error, the defendant would have received a lower sentence? The length of the sentence — though ultimately our concern — is not the “plain” error. Because the government initially bears the burden to prove that a conviction represents a crime of violence, DávilaFélix, 667 F.3d at 55, the error occurs when the district court enhances a sentence based on a prior conviction under a divisible statute without first confirming that the conviction qualifies as a predicate offense. That confirmation may be achieved in various ways: through documentary evidence (i.e., the Shepard materials), by concession of the defendant, or by means of an interpretation of the predicate criminal statute- — -i.e., a legal ruling by the court — -that every variant of the offense qualifies as a crime of violence.
*856 Here, where the statute on its face appears to encompass alternatives that neither involve physical force against a person nor present a “serious potential risk of physical injury to another,” U.S.S.G. § 4B1.2(a),[14] the court erred by using the conviction to enhance Serrano’s sentence without demanding proof from the government that the defendant’s conviction was for a violent version of the divisible crime. It is possible that the enhancement is also erroneous because the conviction at issue was not, in fact, a crime of violence. But to find that the sentencing judge erred in applying the modified categorical approach, an appellate court need not reach the nature of the conviction. Error has occurred when the court relies on a conviction under a divisible statute without confirming, through approved sources provided by the government, that the conviction represents a crime of violence.[15]
The failure to recognize this error is what led the Turbides-Leonardo panel astray. Its approach looks beyond the district court’s erroneous reliance on an unelaborated conviction under a divisible statute and asks whether the defendant has shown that the proper analysis would have revealed that the conviction was erroneously used as a predicate for enhancement. Even if the district court had performed the proper analysis, however — involving the scrutiny of Shepard-approved documents — the inquiry may not have shed light on the predicate conviction. The government may not have been able to produce appropriate records of the targeted conviction — the documents may be inaccessible or no longer exist, meaning that the conviction could not be used to enhance the defendant’s sentence. Hence, by focusing on the possibility that the defendant was convicted of a qualifying crime, and requiring him to prove that he was not, we unfairly leap over the threshold analytical error, i.e., the sentencing court’s failure to require the government to establish the nature of the conviction through approved sources.
If that error were properly acknowledged, the plain error analysis here would unfold unequivocally in the defendant’s favor. Given the broad language of Article 3.1, and the dearth of evidence indicating whether the defendant was convicted of a crime of violence, the court’s error in relying on the unexamined conviction was sufficiently “plain” to satisfy the second prong. The gap in the record should have been obvious to the court. The remaining two elements are equally straightforward. A defendant inescapably suffers prejudice when he receives an extended term of imprisonment without the evidentiary support necessary to justify it,[16] and an unsup *857 ported, prolonged incarceration must be deemed a miscarriage of justice. See Ramos-González, 775 F.3d at 507 & n. 29; Torres-Rosario, 658 F.3d at 117.[17]
Admittedly, this plain error analysis has the feel of allowing the defendant to escape with little disadvantage from his failure to make a timely objection. All four prongs of the plain error inquiry effectively turn on the finding that the error was plain, and the error will almost always be plain when there are no supporting documents in the record. Importantly, however, the typical remedy for a finding of prejudicial plain" error in this context is simply a remand for development of the sentencing record. In many instances, the government on remand will be able to produce the necessary documents to substantiate the qualifying predicate offense, and the defendant’s “victory” will be short-lived. This is the approach taken by a number of circuits. See, e.g., United States v. Reyes, 691 F.3d 453, 459-60 (2d Cir.2012) (per curiam) (finding plain error requiring remand where the district court relies on the PSR to characterize an offense as a “crime of violence,” “even where the defendant does not object to the PSR’s description”); United States v. Castillo-Marin, 684 F.3d 914, 919, 927 (9th Cir.2012) (same); United States v. Boykin, 669 F.3d 467, 469-72 (4th Cir.2012) (finding plain error and remanding for resentencing where the district court relied on the PSR to conclude that the defendant had the requisite number of violent felonies for ACCA enhancement); United States v. McCann, 613 F.3d 486, 502 (5th Cir.2010) (“When a court ... relies on the PSR alone [to characterize an offense as a crime of violence], it makes an error that is clear and obvious.”).
Moreover, we must acknowledge the potentially severe consequences of using pri- or convictions improperly — substantially prolonged terms of incarceration.[18] Undoubtedly, that harsh impact underlies the Supreme Court’s carefully circumscribed list of acceptable records for confirming that a conviction under a divisible statute may be used to enhance a sentence. At the same time, it is an unfortunate reality that many claims such as Serrano’s come to us on plain error review. Criminal defendants often must rely on court-appoint *858 ed counsel who, faced with a myriad of trial and sentencing issues, predictably overlook some of them. The extremely high hurdle to post-conviction relief based on ineffective assistance of counsel means that such a remedy is uncertain at best.
In short, there is simply no reason to apply plain error in a way that will leave intact lengthy, possibly unjustified terms of imprisonment when the cost of ensuring fairness — a resentencing proceeding — is minimal. We should not be uncomfortable with an “easy” showing of plain error, even recognizing the high bar that the plain error standard ordinarily represents. Indeed, the fourth prong of the plain error test requires us to consider “ ‘the fairness, integrity, or public reputation of judicial proceedings.’ ” United States v. Mercado, 777 F.3d 532, 536 (1st Cir.2015) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir.2001)). The plain error approach we apply in this case is incompatible with those concerns.
D. The Role of the PSR
The mistaken approach to plain error adopted in Turbides-Leonardo reflects the confusion in our law about when it is appropriate to rely on an unobjected — to PSR to prove a defendant’s criminal history. Courts may accept the PSR’s representation of the existence of a prior conviction in the absence of objection. See, e.g., United States v. Jimenez, 512 F.3d 1, 7 (1st Cir.2007) (stating that, where an offense listed in a presentence report “is not disputed before the sentencing court, the report itself is competent evidence of the fact stated and, thus, is sufficient proof of that fact”); United States v. Brown, 510 F.3d 57, 74 (1st Cir.2007) (describing the government’s burden of proving a predicate conviction for sentencing purposes as “modest,” and noting that it can be satisfied by, inter alia, “introducing a certified copy of the judgment, or by a statement in the PSR”).
Hoyvever, courts are not permitted to rely on the PSR to establish the character of a conviction under a divisible statute. A decision to accept the PSR as adequate evidence of the nature of a defendant’s prior crimes would conflict with the Supreme Court’s directive that the particular offense committed in violation of a divisible statute .be determined through examination of Shepard-approved documents. Indeed, police reports are a typical source of the facts reported in a PSR, see, e.g., Davis, 676 F.3d at 8-9 (noting that the PSR’s summary of a prior crime was based on a police report), and police reports are expressly excluded from the list of approved documents, see, e.g., Ramos-González, 775 F.3d at 506 (noting that we “may not rely on the police reports related to the earlier conviction” (quoting Carter, 752 F.3d at 20 (citing Shepard, 544 U.S. at 16, 125 S.Ct. 1254))). Although the PSR will commonly include the details of the defendant’s criminal conduct, it will not necessarily reveal the pertinent information for the modified categorical approach, i.e., the specific elements of the crime underlying the listed convictions. See, e.g., Descamps, 133 S.Ct. at 2283 (“The key [in determining whether a prior conviction can serve as an ACCA predicate] ... is elements, not facts.”); id. at 2289 (noting that a defendant may have pled guilty to a less serious version of the crime than reflected in factual statements “found in the old record”).
Thus, although our cases unequivocally allow a sentencing court to rely on the PSR to confirm the existence or validity of convictions in the absence of an objection, other cases properly recognize that such deference cannot extend to the question whether convictions under a divisible statute represent qualifying predicates for *859 sentencing enhancements. See, e.g., Dávila-Félix, 667 F.3d at 56-57 (rejecting government’s reliance “primarily upon the facts as recounted in the presentence investigation report,” despite the defendant’s failure to object to the PSR’s analysis); Jimenez, 512 F.3d at 7 (stating that sufficient proof of the two prior convictions “does not necessarily end our inquiry” because “[i]n some circumstances, the question would remain whether the underlying offenses qualify as controlled substance offenses within the meaning of the applicable sentencing guideline”).
Yet, in Twrbides-Leonardo, the panel cited a single Eighth Circuit case for the proposition that a PSR “may be a permissible source of information about a prior conviction for sentence enhancement purposes” to bolster its conclusion that the district court acted “reasonablfy]” in relying on the uncontroverted PSR to enhance the defendant’s sentence based on a conviction under a divisible statute.- 468 F.3d at 39 (citing United States v. Arrieta-Buendia, 372 F.3d 953, 955-56 (8th Cir.2004)). In the Eighth Circuit case, however, the defendant had admitted his conviction for a type of crime that qualifies as a predicate offense. See Arrieta-Buendia, 372 F.3d at 955 (stating that the defendant “told the district court he was not guilty of the California felony of transporting methamphetamine, but was forced to plead guilty to that crime”). Arrieta-Buendia is not only an out-of-circuit precedent, but it also is inapt where, as here, the PSR does not reveal whether a conviction under a divisible statute is an eligible predicate offense and the defendant has not waived or conceded the point.
To some extent, the panel in Davis recognized the difference between using a PSR to prove the fact of a conviction under a divisible statute and relying on the report to establish the specific elements of the crime underlying that conviction. At issue in Davis was whether a conviction for assault and battery was a predicate offense for career offender status. 676 F.3d at 7. The panel noted that the only evidence in the record indicating the violent nature of the offense was in the PSR, with details drawn from police reports. Id. at 5, 8-9. The defendant, however, did not object to the PSR’s characterization of the offense as a crime of violence, and he did not contest the government’s characterization of him as a career offender at the sentencing hearing. Id. at 6. On appeal, as discussed above, the panel found that the defendant had failed to satisfy the prejudice prong of the plain error inquiry: “[Defendant] has made no argument that the assault and battery was anything other than the harmful type, doing nothing, even on appeal, to question the description provided in the PSR or to argue that appropriate Shepard materials would prove that he committed a non-harmful battery.” Id. at 10.
The Davis panel, however, directly confronted the adequacy of the PSR to show the requisite violent conduct. It first quoted the assertion in Torres-Rosario that “ ‘treating a Massachusetts assault and battery conviction as a [career offender] predicate, without further evidence of violence, is now plain error.’ ” Id. at 9 (quoting Torres-Rosario, 658 F.3d at 116) (alteration and emphasis in Davis). The Davis panel then went on to speculate that “the description in the PSR might constitute such further evidence,” and, for that reason, “this case does not neatly fall within the plain error standards we set in Torres-Rosario.” Id. In an immediately following footnote, the panel observed that “[w]e have never squarely addressed whether reliance on a PSR under these circumstances is proper,” but noted prior dicta indicating that, even though police records are not “permissible Shepard ma *860 terials,” “we would approve of the use of a PSR’s summary of police reports to support the characterization of a predicate offense when the defendant did not object to the PSR.” Id. at 9 n. 6.
This arguable approval in Davis of unchallenged police reports in a PSR to establish the character of a predicate offense is weakly grounded in our precedent and contrary to Shepard. The precedent cited for this proposition is Jimenez, where the panel’s primary focus was on whether challenged predicate crimes listed in the PSR were adequately verified, not on the convictions’ character for the modified-categorical inquiry. See Jimenez, 512 F.3d at 6 (noting appellant’s argument that “the district court erred when it relied on the PSI Report for proof of these prior convictions”). Jimenez did not argue that either of the challenged convictions was “for an offense that falls outside the contemplation of the career offender provisions.” Id. at 5 n. 3; see also id. at 7 (observing that “appellant has made no argument, either in the lower court or in this court, that his prior convictions, if properly substantiated, do not qualify as convictions for controlled substance offenses”).[19]
Davis thus contemplates disregarding the Supreme Court’s explicit restriction on what documents may be consulted to determine the nature of a predicate conviction under a divisible statute, allowing reliance on materials (i.é., police reports) that have been expressly designated as unacceptable for this purpose. See Shepard, 544 U.S. at 16, 125 S.Ct. 1254. In my view, however, we are not free to depart from the Supreme Court’s methodology for determining the eligibility of a predicate offense, even in the context of plain error. That methodology, designed to ensure that prolonged sentences are justified, has substantive importance. See Dantzler, 771 F.3d at 149 (stating that the defendant’s failure to object did not “render the PSR’s description more reliable in establishing the requisite” predicate). That is why, when a sentencing judge errs by failing to demand Shepard-approved proof that the defendant’s conviction under a divisible statute was for a predicate offense, a sentencing enhancement cannot stand if its only foundation is the defendant’s PSR, at least when the report is not drawn from approved sources. Accord Reyes, 691 F.3d at 459 (“We have little trouble concluding that a sentencing court may not rely on a PSR’s description of a defendant’s prearrest conduct that resulted in a prior conviction to determine that the prior offense constitutes a ‘crime of violence’ under U.S.S.G. § 4B1.2(a)(1), even where the defendant does not object to the PSR’s description.”).[20]
*861 The Turbides-Leonardo approach, however, indirectly gives Serrano’s PSR dis-positive weight by rejecting his claim that the record does not support classifying his Article 3.1 offense as a crime of violence. The district court accepted the base offense level calculation recommended in the PSR, which was premised on multiple pri- or convictions — including under Article 3.1 — for crimes of violence. In failing to require proof of the actual basis for Serrano’s convictions, the district court necessarily deferred to the PSR’s depiction of his offenses. By leaving the district court’s reliance on the PSR undisturbed (unless the defendant comes forward with contrary evidence), we are sanctioning that deference. Yet, as I have shown, any suggestion in our cases that such deference may be permissible developed from inapplicable precedent and, more importantly, contravenes the Supreme Court’s specific delineation in Shepard of the records that may substantiate the eligibility for enhancement of a conviction under a divisible statute.
In light of this analysis, the district court plainly erred in deferring to the PSR — or, as described above, in failing to demand acceptable forms of proof from the government. The defendant’s failure to make a timely objection imposes on him the burden to show that he suffered from the court’s error. We should conclude that his burden is easily met — -and a resentencing required — if the court relied on such convictions to enhance his sentence.
II.
In examining a claim of plain error in the context of the modified categorical approach, we cannot lose sight of the courts’ obligation to ensure that extended incarceration is imposed only when the government has proven that it is justified by a defendant’s criminal history. We can, and should, meet this obligation by adopting the Second Circuit’s (and other courts’) approach that a “defendant’s failure to object d[oes] not cure the Government’s failure to submit the proper evidence.” Dantzler, 771 F.3d at 149 (describing the holding in Reyes, 691 F.3d at 459). As I have explained, requiring the government to retain its burden to justify a sentencing enhancement-does not result in excusing the defendant’s default. Nor will a finding of prejudicial plain error and the required relief — at most, a new sentencing proceeding — impose undue burden on the court. Although few sentences may be changed through this process, “the fairness, integrity, [and] public reputation of judicial proceedings” will be enhanced. Mercado, 777 F.3d at 536 (internal quotation marks omitted).
In this case, where variants of Article 3.1 do not include the requisite element of violence, we should not reject appellant’s claim on the ground that some offenses under the statute would qualify as predicate crimes of violence. The district court-committed plain error when it relied on Serrano’s conviction under that divisible statute to justify an increased term of imprisonment in the absence of approved forms of evidence of the nature of his particular crime. The court should have insisted that the government shoulder its burden to substantiate that Serrano’s conviction was in fact a qualifying predicate. Hence, on en banc review, this court should hold that Serrano is entitled to a new sentencing proceeding where the government may seek to show that his conviction was for a crime of violence.

. An offense qualifies as a crime of violence if it is punishable by more than one year of imprisonment and either "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another,” or (2) is one of several enumerated crimes not relevant here, “or otherwise involves conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B 1.2(a).

. Although the terms "waiver” and "forfeiture” are sometimes used interchangeably, "[w]hether an objection has been waived or simply forfeited affects the scope of our appellate review.'' United States v. Gaffney-Kessell, 772 F.3d 97, 100 (1st Cir.2014). Waiver occurs when a litigant intentionally relinquishes or abandons a known right, and we ordinarily will not consider a waived issue on appeal. Id. (citing United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). Forfeiture refers to "a ‘failure to make the timely assertion of a right.’ ” Id. (citing Olano, 507 U.S. at 733, 113 S.Ct. 1770). "A forfeited issue still may be reviewed on appeal, albeit for plain error.” Id. This distinction is important and consequential in cases like the one before us.

. Likewise, even if a defendant insists that the crime of conviction is not a crime of violence, he does not have to prove that assertion.

. In Dávila-Félix, the court noted that the drug convictions at issue “were only briefly referenced and were not discussed or relied upon at sentencing.” 667 F.3d at 57. In Torres-Rosario, the panel excused a concession that the defendant fell within the armed career criminal statute (an arguable waiver) because of a change in First Circuit law prompted by new Supreme Court precedent. See 658 F.3d at 116.

. In my view, the circumstances described in Turbides-Leonardo do not show waiver. Waiver should be reserved for cases in which the defendant explicitly agrees that particular listed crimes qualify as predicates, and it should not be inferred from silence. See Torres-Rosario, 658 F.3d at 116 ("At least where a party makes an explicit and specific concession, practical reasons favor holding a party to such a concession....”). In Turbides-Leonardo, the defendant simply failed to object, both to the Presentence Investigation Report ("PSR”) and at sentencing, which is forfeiture. See 468 F.3d at 37. Nonetheless, the decision incorporates an assumption that waiver occurred, and I will do likewise. In the case now before us, Serrano did object to the PSR’s guidelines calculation, albeit on other grounds. The government does.not argue waiver, and I agree that Serrano’s failure to object specifically on the predicate-crime issue is properly characterized as forfeiture.

. Indeed, the scenario in Davis is more aptly labeled a waiver than were the circumstances described in Turbides-Leonardo.

. Article 3.1 applies to "[a]ny person who employs physical force or psychological abuse, intimidation or persecution against the ' person of [a domestic partner] ... to cause physical harm to the person, the property held in esteem by him/her, ... or to another's person, or to cause grave emotional harm....” P.R. Laws Ann. tit. 8, § 631.

. I address in this concurrence only the treatment of predicate convictions under a divisible statute, where the statute on its face provides notice to the government and the court that a conviction is unusable as a predicate offense without further inquiry under the modified categorical approach. I therefore do not consider the nature of plain error review for challenges to predicate convictions under " 'indivisible' statute[s].” Descamps, 133 S.Ct. at 2281; id. at 2282 (holding that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements”).

.In the career offender context, the error technically results in an elevated base offense level, which can be presumed to lead the district court to impose a longer sentence than would otherwise apply. See Turbides-Leonardo, 468 F.3d at 37 (noting that a lower Guidelines sentencing range “presumably *857 [will result in] a more lenient sentence”). In the context of the Armed Career Criminal Act ("ACCA”), the erroneous reliance on predicate convictions may trigger improper mandatory minimum sentences. See, e.g., Shepard, 544 U.S. at 15, 125 S.Ct. 1254 (noting that the ACCA mandates a minimum 15-year sentence after three convictions for serious drug offenses or violent felonies). We have long treated precedent on the ACCA and the Guidelines career offender enhancement interchangeably with respect to the modified categorical approach. Ramos-González, 775 F.3d at 504 n. 24.

. My discussion presumes that the defendant's PSR does not list other predicates that categorically qualify as crimes of violence and could be substituted for the one on which the district court erroneously relied. The prejudice assessment obviously would be different if that were the situation.

. For example, in Shepard, which involved the ACCA, the government stated that Shepard’s prior convictions ''raised his sentencing range from between 30 and 37 months (under the United States Sentencing Guidelines) to the 15-year minimum required by [the statute].” 544 U.S. at 16, 125 S.Ct. 1254. In United States v. Martin, 749 F.3d 87 (1st Cir.2014), we described as "significant” the difference in sentence between career offender status and non-career offender status: a career offender range of 188 to 235 months compared with an otherwise applicable sentencing range of 27 to 33 months. Id. at 91. See also, e.g., United States v. Castillo-Marin, 684 F.3d 914, 927 (9th Cir.2012) (comparing Guidelines range of 46-57 months with enhancement based on crime of violence to range of 0-6 months absent the enhancement).

. The precedent cited by the Jimenez panel further demonstrates that the issue addressed there was whether the convictions were properly included in the PSR, not whether the convictions were eligible predicates for enhancement. To support its statement that the PSR provides "competent evidence of the fact stated and, thus, is sufficient proof of that fact,” the court cited United States v. Pelletier, 469 F.3d 194, 202-03 (1st Cir.2006), and United States v. Cordero, 42 F.3d 697, 701 (1st Cir.1994), which involved challenges to the fact (Pelletier) or constitutionality (Cordero) of a conviction. 512 F.3d at 7.

. In Dantzler, the Second Circuit reserved judgment on whether a PSR may be a permissible source of evidence of the nature of a predicate conviction if -the report "was derived in whole, or in large part,” from Shepard-approved materials. 771 F.3d at 147. I likewise intimate no view on that scenario. But see, e.g., Boykin, 669 F.3d at 469 (stating that a PSR may be used for enhancement purposes if it " 'bears the earmarks of derivation from Shepard-approved sources,'" at least where the defendant " 'never raised the slightest objection either to the propriety of its source material or to its accuracy' ”) (quoting *861 United States v. Thompson, 421 F.3d 278, 285 (4th Cir.2005)).