# United States Court of Appeals
## For the First Circuit

No. 17-2197

UNITED STATES OF AMERICA,

Appellee,

v.

MICKEY GILLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Thompson, Boudin, and Barron,
Circuit Judges.

Andrew Levchuk and Bulkley, Richardson and Gelinas, LLP on brief for appellant.
Halsey B. Frank, United States Attorney, and Renée M. Bunker, Assistant United States Attorney, Appellate Chief, on brief for appellee.

December 19, 2018

**BOUDIN**, <u>Circuit Judge</u>.  Mickey Gilley pled guilty pursuant to a plea agreement to one count of distribution of heroin and fentanyl.  21 U.S.C. § 841(a)(1), (b)(1)(C).  The plea agreement included a stipulated sentencing range of 132 to 180 months that bound the district court upon its acceptance of the agreement.  The district court accepted the agreement and sentenced Gilley to 168 months.  Gilley now appeals his sentence as substantively unreasonable.

On September 20, 2016, Gilley and a friend traveled to Portland, Maine, and bought $100 worth of heroin (approximately one gram).  Half was for Gilley and Gilley's girlfriend, K.W., to share.  During the drive back to Bath, Maine, where Gilley lived, Gilley was in contact with K.W. and used some of the heroin.

After arriving at K.W.'s apartment, Gilley and K.W., who had been drinking, used the heroin.  Eventually, K.W. went to bed.  Approximately forty-five minutes later, Gilley lay down next to K.W. and found her unresponsive.  Gilley fell asleep.

Gilley awoke two hours later to find K.W. still unresponsive.  He rolled her over, and blood came out of her nose and mouth.  He "freaked out" and dumped water on her.  Gilley called his brother, Christopher, who told him to start CPR.  After calling Christopher, Gilley moved K.W. to the shower and let water run on her.  After Christopher arrived, Christopher called 911.

- 2 -

Gilley left the apartment and took his and K.W.'s daughter to a neighbor's apartment.

Gilley failed to immediately call 911 and left the apartment after his brother arrived because Gilley was subject to two sets of bail conditions that prohibited him from having contact with K.W. Cell phone records indicate that about forty-five to ninety minutes elapsed from the time Gilley started talking with Christopher to the time Christopher called 911.

A medical examiner determined after an autopsy that K.W. died of acute intoxication from the combined effects of fentanyl, heroin, and ethanol. In grand jury testimony, Maine Drug Enforcement Agency Agent Chad Carleton suggested that the heroin was actually a mixture of heroin and fentanyl.

On July 26, 2017, Gilley was charged in a two-count superseding indictment with distribution of heroin and fentanyl resulting in death (Count 1) and distribution of heroin and fentanyl (Count 2). 21 U.S.C. § 841(a)(1), (b)(1)(C).

On August 1, 2017, pursuant to a written plea agreement, Gilley pled guilty to Count 2, while the government agreed to dismiss Count 1, which carried a twenty-year statutory minimum sentence. 21 U.S.C. § 841(b)(1)(C). For Count 2, the parties agreed to recommend a sentence between 132 and 180 months, a recommendation that bound the district court if the judge accepted the plea agreement. Fed. R. Crim. P. 11(c)(1)(C).

The agreement also contained a non-binding recommendation that the court find that Gilley accepted responsibility for the offense and that his offense level should be reduced accordingly. Further, the parties stipulated that Gilley distributed a mixture containing heroin and fentanyl to K.W. and that K.W. died as a result of using the substance. Finally, Gilley waived the right to appeal the guilty plea and a sentence of imprisonment that did not exceed 156 months.

The Presentence Report ("PSR") held Gilley accountable for one gram of a mixture containing heroin and fentanyl, giving Gilley a base offense level of twelve. The PSR added two offense levels for obstruction of justice and subtracted two offense levels for Gilley's acceptance of responsibility.[1] The total offense level was twelve.

According to the PSR, Gilley's fourteen prior convictions resulted in five criminal history points, yielding a criminal history category ("CHC") of III. His past criminal conduct included incidents of domestic violence against K.W. and

---

[1] The PSR relied on three facts to justify the obstruction-of-justice enhancement: First, Gilley called his brother, rather than 911, when he found K.W. unresponsive; second, due to his bail conditions, Gilley concealed that he was at K.W.'s apartment; and third, officers found no evidence of drugs or drug paraphernalia in K.W.'s apartment, although Gilley admitted he and K.W. used drugs that evening, suggesting evidence was removed from the apartment. At the same time, the PSR concluded that Gilley's pleading guilty and expressing remorse warranted the reduction for acceptance of responsibility.

witness-tampering and victim-contact charges based on Gilley's discouraging K.W. from contacting the police after domestic-violence incidents.

Given a total offense level of twelve and a CHC of III, the PSR recommended an imprisonment range of fifteen to twenty-one months. It further said departure from the range might be warranted because death resulted from the offense, U.S.S.G. § 5K2.1, and to reflect the actual seriousness of the offense based on Gilley's conduct underlying the dismissed charge, id. § 5K2.21.

Defense counsel argued that the district court should consider the range stipulated in the plea agreement and sentence Gilley to 132 months in prison, the range's lower bound. Counsel explained that Gilley and K.W. were heroin addicts who had relapsed shortly before this incident; K.W. chose to engage with Gilley and use drugs; and Gilley, who used the same batch of heroin, was unaware the heroin was mixed with fentanyl. Counsel cited state and federal cases to show that a 132-month term represented an appropriate sentence.

The government argued for a sentence of 180 months, the top of the stipulated range. The government stressed Gilley's prior acts of domestic violence, his contact with K.W. in breach of his then-existing bail conditions, his criminal conduct on that occasion, and his failure to call 911 when finding K.W. non-

responsive. The government opposed the PSR's recommended obstruction-of-justice enhancement.

At sentencing on December 5, 2017, the district court accepted the binding plea agreement. The court declined to apply the obstruction-of-justice enhancement, and it computed a total offense level of ten and CHC of III, yielding a guidelines range of ten to sixteen months. The court recognized that the plea agreement's stipulated range was "considerably higher" than the guidelines range, but in exchange, the government had agreed to dismiss the Count 1 charge that carried a twenty-year mandatory minimum.

The court sentenced Gilley to 168 months in prison, a sentence that fell within the range stipulated in the plea agreement (132 to 180 months) as well as between the defense counsel's recommendation (132 months) and the government's recommendation (180 months). Gilley now claims that the sentence is substantively unreasonable.

At the outset, the government says that our jurisdiction is "questionable," given that the district court imposed an imprisonment term within the range stipulated in the plea bargain. The government suggests that section 3742(c), which governs appellate review of Rule 11(c)(1)(C) plea agreements, may bar our review of Gilley's sentence: "In the case of a plea agreement that includes a specific sentence under [Rule 11(c)(1)(C)] . . .

a defendant may not [make certain arguments on appeal] unless the sentence imposed is greater than the sentence set forth in such agreement . . . ." 18 U.S.C. § 3742(c).[2] Because the district court imposed a sentence within the range stipulated in Gilley's Rule 11(c)(1)(C) plea agreement, the government contends that Gilley may not appeal--and so this court may not review--his sentence.

Gilley's plea agreement included a waiver of the right to appeal "[a] sentence of imprisonment that does not exceed 156 months," and the colloquy during Gilley's change-of-plea hearing implied that Gilley retained a right to appeal any sentence greater than 156 months. The sentence imposed exceeded this limit. Even if we are mistaken that Gilley retained the right to appeal under these circumstances, the mistake will prove harmless because the appeal is itself without merit.

Gilley's sole claim on appeal is that the district court's 168-month sentence is substantively unreasonable. At sentencing, defense counsel failed to object to the sentence imposed by the district court. Whether our review is for plain error or abuse of discretion, a matter of some debate, United

---

[2] Federal Rule of Criminal Procedure 11 has been reorganized. Fed. R. Crim. P. 11 advisory committee's note to 2002 amendment. Section 3742(c) refers to Rule 11(e)(1)(C), which is now Rule 11(c)(1)(C), the basis for Gilley's plea agreement.

States v. Millán-Román, 854 F.3d 75, 80–81 (1st Cir. 2017), Gilley's sentence is substantively reasonable.

Although the district court's 168-month sentence is within the range stipulated in the plea agreement, Gilley claims the court should have sentenced him to the stipulated range's lower bound. To this end, Gilley argues that the district court overlooked, or failed to give sufficient weight to, a number of considerations.

First, Gilley says that the district court ignored K.W.'s own contributions to her death. Indeed, the district court did not expressly point to K.W.'s culpability as a mitigating factor. A district court, however, "is not required to address frontally every argument advanced by the parties . . . ." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). And the implicit premise of Gilley's argument is mistaken: K.W.'s contribution does not necessarily make Gilley's conduct any more tolerable.

The court, properly, focused on Gilley's culpability. The court acknowledged Gilley was "not a big drug dealer" and "didn't have any reason to believe . . . [the heroin] had fentanyl in it" but faulted Gilley for choices wholly within his control: his failure to call 911 and his failure to obey his bail conditions.

Second, Gilley attempts to downplay his failure to call 911, explaining that "[t]here is . . . no evidence in the record to show that a prompt call to 911 would have saved K.W." Yet the aggravating nature of Gilley's failure to call is not simply the possibility that the call could have saved K.W.; rather, it is that the failure to call is evidence that Gilley valued his immediate liberty over K.W.'s life.

Third, Gilley claims the district court erred in making "the history of domestic abuse such an important factor" because "no nexus" exists between the domestic violence and K.W.'s death. The court, however, made the nexus plain at sentencing: The fact that Gilley failed to call 911, placing his liberty ahead of K.W.'s life, was, in the court's words, "somewhat predictable" given Gilley's history of abusing K.W.

The significant weight the court assigned the history of domestic abuse, chiefly within its discretion, United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011), was supported by the court's conclusion that Gilley "controlled and abused" K.W., a factual determination this court reviews for clear error. United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). Gilley's phone calls urging K.W. to hide her injuries from the police when he was in jail facing domestic-violence charges are a further aggravation.

Fourth, Gilley asserts the court ignored letters from Gilley's family and friends that spoke to his positive attributes and reports from professional treatment providers that concluded Gilley represents a good candidate for rehabilitation. But this claim contradicts the court's express statement that it considered, among other things, the letters on Gilley's behalf, the parties' sentencing memoranda, and the parties' arguments at the sentencing hearing.

Further, the 168-month sentence, although severe, was less than the government's recommended sentence and below the top of the range that bound the court. The court had no obligation to accept the parties' request, and the judge could easily have chosen to impose a stiffer sentence. We can comfortably conclude the district court, in opting for a less-than-maximum sentence, considered these mitigating factors.

Fifth, Gilley argues that the district court violated the parsimony principle--the overarching sentencing requirement that courts impose sentences sufficient, but not greater than necessary, to comply with the purposes of sentencing. In particular, Gilley claims the district court took "insufficient note" of "similar" federal and state cases in which, in Gilley's view, "substantially less severe sentences had been imposed for similar conduct."

To the contrary, the district court not only noted the cases Gilley offered as analogues but also explicitly distinguished those cases from Gilley's case. Recognizing that 144 months represented the highest sentence in the allegedly comparable cases, the court pointed out that those cases did not have "the overlay of domestic violence" present in Gilley's case.

Aside from offering comparable cases, Gilley asserts that the district court violated the parsimony principle because the three additional years "will do nothing to protect the public," and Gilley has already demonstrated genuine remorse and began his rehabilitation. This argument, however, ignores other sentencing purposes--such as reflecting the seriousness of the offense, providing just punishment, and affording adequate deterrence--that section 3553 demands a district court consider. 18 U.S.C. § 3553(a)(2).

In sum, Gilley's arguments boil down to a disagreement with the weight the court assigned particular factors, a task which is "largely within the [sentencing] court's informed discretion." Clogston, 662 F.3d at 593. Here, the history of abuse, the failure to seek timely help, and the callous selfishness of Gilley's behavior amply justify the sentence imposed.

**Affirmed.**