# United States Court of Appeals
## For the First Circuit

No. 15-2076

UNITED STATES OF AMERICA,

Appellee,

v.

ARQUÍMEDES A. GIERBOLINI-RIVERA,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]


Before

Torruella, Selya, and Lynch,
Circuit Judges.

Joseph C. Laws, on brief for appellant.
Julia M. Meconiates, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, Acting Chief, Appellate Division, on brief for appellee.

August 14, 2018

**TORRUELLA**, **Circuit Judge**. Defendant-Appellant Arquímedes A. Gierbolini-Rivera ("Gierbolini") pled guilty to one count of theft in connection with health care, in violation of 18 U.S.C. § 669(a), and to one count of wire fraud, in violation of 18 U.S.C. § 1343. Gierbolini now challenges the procedural and substantive reasonableness of his upwardly variant sentence. After careful review, we affirm.

## I.  Background

Because Gierbolini pled guilty, we draw the facts from the plea colloquy, the unchallenged portions of the Presentence Investigation Report ("PSR"), and the sentencing hearing transcript. See United States v. Fernández-Santos, 856 F.3d 10, 14 n.1 (1st Cir. 2017).

In January 2000, Gierbolini was hired as an accountant by Modern Radiology, PSC.[1] Gierbolini's responsibilities consisted of preparing financial reports for external audits and tax purposes, as well as making payments for all of his employer's corporate expenses, including general payroll. To perform these

---

[1]  Modern Radiology was a professional services corporation that provided "radiological health care services such as sonograms, CT Scans, MRIs and X-rays, among others. [It] had contracts to provide services to patients under several different medical plans" and was considered a "health care benefit program" under 18 U.S.C. § 24(b).

duties, Gierbolini was entrusted with managing Modern Radiology's operating account, which he would use to make approved payments.

In or around 2005, Gierbolini devised and implemented a scheme to defraud Modern Radiology through regularly scheduled transfers of thousands of dollars to his personal accounts. In the course of his regular employment duties, Gierbolini would use Microsoft Excel to prepare a spreadsheet detailing the amount to be paid on each pay period to each employee, via a direct deposit wire transfer from Modern Radiology's operating account to each employee's personal account. The spreadsheet's rows and columns identified, respectively, the employees' names and the amount each employee was to be paid for a given period. The last column of the spreadsheet showed the net total amount to be paid to each employee. At the bottom of that column, Gierbolini created a cell that added up all of the net total amounts to be paid to each employee -- resulting in the total amount to be withdrawn from Modern Radiology's operating account for a given pay period. But, in that same last column, Gierbolini would also enter an additional, unauthorized, sum of money into an otherwise-empty cell. He would then conceal the contents of this extra cell by changing the font color to white so that it would be invisible against the spreadsheet's white background. This unauthorized amount was still included, however, in the net total to be

withdrawn from Modern Radiology's account. After paying each employee their amount due for that pay period, Gierbolini would then wire himself the unauthorized amount included in the "empty" cell. By only ever presenting Modern Radiology management with black and white printouts of his spreadsheets, on which the unauthorized amounts were invisible, and by always taking out the same amount, Gierbolini was able to defraud Modern Radiology for years. He carried out this scheme in every pay period from January 2005 to February 2010. Altogether, Gierbolini completed 217 unauthorized transfers for a total of $984,596.95.

In 2013, Gierbolini was charged with fifty-three counts of theft in connection with health care, in violation of 18 U.S.C. § 669(a), and twenty-eight counts of wire fraud, in violation of 18 U.S.C. § 1343. Gierbolini pled guilty to one count of each charge,[2] pursuant to a plea agreement.[3]

In the plea agreement, the parties calculated a total offense level of twenty. To arrive at that level, they started with a base offense level of seven, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1. They then found applicable a two-level enhancement for Gierbolini's abuse of a

---

[2]  In return, the government requested that the remaining counts be dismissed, which the district court did.

[3]  The plea agreement also contained two forfeiture provisions.

position of trust in a manner that significantly facilitated the commission or concealment of the offense, see id. § 3B1.3, a fourteen-level enhancement because the offense involved losses greater than $400,000 but not over $1,000,000, see id. § 2B1.1(b)(1)(H), and a three-level reduction for Gierbolini's timely acceptance of responsibility, see id. § 3E1.1. This, in conjunction with Gierbolini's Criminal History Category of I, yielded a Guidelines sentencing range ("GSR") of thirty-three to forty-one months' imprisonment. Gierbolini reserved the right to argue for a sentence at the lower end of the proposed GSR, while the government could argue for a sentence at the high end of the GSR.

The PSR tracked the plea agreement's calculation of the GSR. The PSR also stated that, in March 2015, the U.S. Probation Officer had interviewed the president of Modern Radiology, who reported that Gierbolini's conduct caused him "substantial financial hardship" and, "as a result of defendant's fraudulent acts coupled with [Puerto Rico's] current fiscal situation," Modern Radiology was "facing a precarious financial situation." Gierbolini did not object to these statements in the PSR. Shortly thereafter, Modern Radiology filed for Chapter 11 bankruptcy.

At the sentencing hearing, the court stated that it had reviewed the plea agreement, the stipulated facts contained in

-5-

that agreement, the PSR, Modern Radiology's submissions in support of a forfeiture order, and letters submitted by Gierbolini's friends, relatives, and members of the community. Gierbolini did not object to the consideration of any of these materials. Defense counsel attested that he had reviewed the PSR with Gierbolini "several times," and that there was nothing further to add or clarify. Gierbolini confirmed that he had reviewed the PSR with his attorney and that "the information contained in the report [was] correct."

A representative of Modern Radiology attended the sentencing hearing, accompanied by counsel. Without objection from any party, Modern Radiology's counsel stated for the record that Modern Radiology had "no opinion as to the sentence to be imposed." He clarified that Modern Radiology was present because of "the forfeiture issue" only, and limited his statements to a request for discovery to locate any additional assets belonging to Gierbolini that could be forfeited. Gierbolini opposed this request, and the court denied it.

The district court then explained that it had considered the 18 U.S.C. § 3553(a) sentencing factors. The court referenced Gierbolini's history and characteristics, including his age, good upbringing, education, employment as an accountant and attorney, good physical and mental health, lack of substance abuse history,

three dependents, and his status as a first time offender. The district judge commented that she was "really trouble[d]" by several aspects of the case, including that Gierbolini "had a good upbringing," with parents who taught him "what the law is and how it is to be respected." Moreover, the court noted that while Gierbolini was committing these fraudulent actions as an accountant, he was also studying to be a lawyer. The judge explained that this showed "double the blatant disregard . . . for the law, for society, for the person [who] had trusted [Gierbolini] and given [him] a position, a good salary." Finally, the court contrasted Gierbolini's case with those in which defendants are motivated by illness, addiction, or "total despair." Of evident concern to the judge was the apparent lack of any discernable need or motivation underlying Gierbolini's conduct.

After calculating the same GSR as that which the plea agreement and PSR contained, the court found that the GSR did not "properly reflect the seriousness of the offense and [did] not necessarily promote respect for the law or reflect the harm caused to the victim." Specifically, the court focused on two factors that it found "highly important and of significant weight." First, the court reiterated its concern that Gierbolini was both an accountant and a lawyer, and yet appeared to have "no qualms" about abusing his position of trust repeatedly and regularly over

a span of at least five years.[4]  Second, the court emphasized the "substantial harm and financial hardship to the victim which ha[d] turned them to becoming insolvent."  Thus, the court imposed an upwardly variant sentence of sixty months of imprisonment on each count of conviction, to run concurrently, and to be followed by three years of supervised release.  The court also ordered Gierbolini to forfeit $394,300, and to pay $590,296 in restitution to the victim, Modern Radiology.  Gierbolini did not object to the sentence imposed.

Twelve days later, Gierbolini filed a motion for reconsideration of his sentence.  The next day, he filed a notice of appeal with this court.  Upon the district court's request, while retaining jurisdiction, we remanded the case to the district court to allow it to rule on Gierbolini's motion for reconsideration.  The district court ultimately denied the motion for reconsideration.[5]

---

[4]  At the sentencing hearing, the government noted, without objection, that it was limited in the charges it could bring against Gierbolini: first, by the statute of limitations, which allowed indictment only for conduct after December 18, 2013; and second, due to "a lack of documentation" by the victim of Gierbolini's pre-2005 conduct.

[5]  Both parties agree that because Gierbolini was not sentenced in accordance with the parties' recommendations, the waiver of appellate rights provision in his plea agreement does not bar this appeal.  See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

## II.  Discussion

Gierbolini challenges both the procedural and substantive reasonableness of his sentence.  We review sentencing decisions under the U.S.S.G. for "reasonableness, regardless of whether they fall inside or outside of the applicable GSR." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). Our review is bifurcated.  We first ensure that the district court has committed no significant procedural error, such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range."  United States v. Trinidad-Acosta, 773 F.3d 298, 309 (1st Cir. 2014) (quoting United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010)).  "[I]f the sentence is procedurally sound, we then ask whether the sentence is substantively reasonable."  United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015).  We undertake this inquiry, which focuses on the duration of the sentence in light of the totality of the circumstances, United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014), while remaining mindful that "[t]here is no one reasonable sentence in any given case but, rather, a universe

of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). And, although the district court must consider a "myriad of relevant factors," the weighting of those factors is "within the court's informed discretion." Id. at 593. A sentence is substantively reasonable so long as the sentencing court has provided a "plausible sentencing rationale" and reached a "defensible result." Martin, 520 F.3d at 96 (citing United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006)).

## A. Procedural Reasonableness

With regard to procedural reasonableness, Gierbolini argues that the district court did not adequately explain its chosen sentence. He asserts that the advisory GSR already accounted for a fourteen-level enhancement for the amount involved in the offense and a two-level enhancement for abuse of a position of trust, and that the district court therefore erred by failing to identify additional factual support for why his sentence fell outside of the GSR. Furthermore, Gierbolini argues that the district court was "influenced by the presence of the victim in court and the unwarranted intervention of his lawyer," and also took into account impermissible considerations related to the victim as part of its sentencing decision. Specifically, he

asserts that his upwardly variant sentence was based on the unsupported fact that his conduct had caused Modern Radiology's insolvency. He maintains that Modern Radiology's bankruptcy was a result of mismanagement and "millions of dollars" of debt, and therefore, should not have been considered an aggravating factor during sentencing.

We generally apply the deferential abuse of discretion standard to preserved challenges to the procedural reasonableness of a sentence.[6] Del Valle-Rodríguez, 761 F.3d at 176. However, when a defendant fails to preserve an objection to the procedural reasonableness below, the plain error standard supplants that customary standard of review. United States v. Rondón-García, 886 F.3d 14, 20 (1st Cir. 2018). Under the plain error standard, the defendant must show: "(1) that an error occurred, (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Medina-Villegas, 700 F.3d 580, 583

---

[6] Under this standard, "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

-11-

(1st Cir. 2012) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

Gierbolini urges us to apply the abuse of discretion standard "because of [his] objection below." Yet, the sentencing transcript reveals no objection. If Gierbolini suggests that his objection was preserved in his motion for reconsideration, "such after-the-fact motions are insufficient to evade plain-error review." United States v. Pedroza-Orengo, 817 F.3d 829, 833 n.5 (1st Cir. 2016) (citing United States v. Almonte-Reyes, 814 F.3d 24, 27 n.4 (1st Cir. 2016)). Accordingly, because Gierbolini failed to preserve his procedural challenges below, we review them for plain error. See United States v. Fernández-Hernández, 652 F.3d 56, 71 (1st Cir. 2011). However, we find no error, plain or otherwise.

Gierbolini's primary procedural challenge is that the district court's explanation of his sentence was inadequate because the reasons relied on by the district court in justifying his sentence were already included in the GSR calculation. We disagree.

A sentence outside the advisory range typically ought to be accompanied by greater explanation than need accompany a guideline sentence. Turbides-Leonardo, 468 F.3d at 41. Furthermore, "[w]hen a factor is already included in the

calculation of the guidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation." United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006).

Here, the sentencing court complied with these requirements. After calculating the GSR, the judge considered the § 3553(a) factors, including mitigating factors. The court noted that the GSR accounted for Gierbolini's abuse of his position of trust and for the amount stolen. The court, however, expressed its concern that the GSR did not "properly reflect the seriousness of the offense and [did] not necessarily promote respect for the law or reflect the harm caused to the victim." The court listed several specific facts motivating its finding that the GSR was inadequate, including Gierbolini's abuse of trust, the harm the victim suffered, and Gierbolini's apparent lack of compunction about repeating the crime regularly over the course of several years. Regarding the abuse of trust, the court highlighted that Gierbolini made 217 fraudulent transactions over the span of several years, while enjoying the complete trust of his employer. The court found that the sentencing guidelines (including the position-of-trust enhancement) did not adequately account for the

duration, breadth, or consistency of this criminality. Moreover, the district court found that Gierbolini's profession and legal knowledge amounted to "double the blatant disregard . . . for the law, for society, [and] for the person [who] had trusted [him]." Thus, it was on the basis of these specific facts that the court found Gierbolini's abuse of trust to be extraordinary.

Similarly, the court emphasized "the substantial harm and financial hardship to the victim" resulting from Gierbolini's stealing of almost a million dollars. Although the GSR calculations already accounted for the total amount stolen from Modern Radiology, the district court also noted the detrimental effect that Gierbolini's actions had on Modern Radiology's solvency, which led, in part, to substantial "financial hardship" and its eventual filing for bankruptcy. These were additional facts not accounted for in the GSR calculations.

Although Gierbolini complains of the district court's reliance on the "unsupported fact" that his conduct had caused Modern Radiology's insolvency, and maintains that Modern Radiology's bankruptcy was not caused by his actions but rather was a result of mismanagement and "millions of dollars" of debt, we discern no error.

In the PSR, the Probation Officer noted that Modern Radiology's insolvency was a result of Gierbolini's fraudulent

acts, coupled with Puerto Rico's current fiscal crisis, resulting in a "substantial financial hardship."  Gierbolini did not object either to the PSR's identification of the causes of Modern Radiology's insolvency, or to the district court's statement that his conduct had resulted in substantial harm and financial hardship to the victim.  Because Gierbolini did not contest the PSR or the substance of the factual allegations, the district court properly relied on the facts set forth in the PSR, as they bore "sufficient indicia of reliability."  United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003) (noting that when there is no objection, the district court is entitled to rely on the facts in the PSR (citing United States v. Taylor, 277 F.3d 721, 724 (5th Cir. 2001))); see also Rondón-García, 886 F.3d at 25 ("This failure to object constitutes a waiver of [the defendant's] right to challenge the information contained in the PSR.").[7]  Thus, the district court did not commit procedural error by considering that Modern Radiology had filed for bankruptcy as a result, in part, of Gierbolini's conduct.[8]

---

[7]  Moreover, at sentencing, Gierbolini acknowledged that Modern Radiology had "move[d] its situation to the Bankruptcy Court."

[8]  We also reject Gierbolini's contention that the district court was "influenced by the presence of the victim in court and the unwarranted intervention of his lawyer," who, despite acknowledging that he did not "have a right to intervene in this matter" as a "criminal matter," nevertheless addressed the court. Contrary to Gierbolini's contentions, pursuant to 18 U.S.C.

-15-

In sum, the district court, which "need[ed] only identify the main factors behind its decision," United States v. Vargas-García, 794 F.3d 162, 166 (1st Cir. 2015) (citing Turbides-Leonardo, 468 F.3d at 40-41), adequately set forth its reasons for imposing an upwardly variant sentence and, in so doing, properly relied on facts included in the PSR to which Gierbolini not only failed to object, but even expressly indicated were correct.

## B. Substantive Reasonableness

Finally, Gierbolini alleges that the district court improperly weighed the § 3553(a) factors and various mitigating circumstances, and also that it engaged in reverse "socioeconomic discrimination" by considering that he had "a good upbringing and came from a good family," and thus he had no excuse for his unlawful conduct. According to Gierbolini, "nothing in [his mitigating factors] make[s] the [GSR] of 33 to 41 months inappropriate as to Mr. Gierbolini." Thus, he says, the upward variance was unjustified.

---

§ 3771(a)(4), the victim had the right not only to attend the public proceeding, but also to be "reasonably heard." Moreover, the victim's statement that he had no "right to intervene in this matter," referred to the bar on the victim's intervention as a party to the criminal case pursuant to 21 U.S.C. § 853(k)(1). Thus, the district court did not commit procedural error by allowing the victim's representative to address the court.

In considering a preserved challenge to the substantive reasonableness of a sentence, we apply the abuse of discretion standard, "taking into account the totality of the circumstances." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). Gierbolini, however, did not object below. In such cases, it is unclear whether the abuse of discretion standard or the plain error standard applies. Id. at 228. We need not decide this issue, however, because Gierbolini's claim fails under either standard.

In essence, Gierbolini's claim is that the district court placed too little weight on the mitigating factors. But, the record shows that the district court properly considered the § 3553(a) sentencing factors, including mitigating factors. In addressing mitigating factors, the district court noted that Gierbolini had three dependents, "a good upbringing" in which "good values were taught," no prior criminal record, and the "potential to rehabilitate." Nonetheless, the court determined that, despite these mitigating factors, the seriousness of the offense -- including the duration, breadth, and consistency of Gierbolini's criminal acts and the harm inflicted on the victim -- the need for deterrence, and to promote respect for the law -- in light of Gierbolini's "blatant disregard . . . for the law, for society, for the person that had trusted [him] and given [him] a position, a good salary" -- outweighed the mitigating factors. The district

court is afforded broad discretion in weighing the § 3553(a) factors to determine the sentence, and this court "will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others." United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009).

Here, the district court gave a plausible explanation and reached a defensible result in light of Gierbolini's criminal acts against a trusting employer every two weeks, for at least four years, to the tune of nearly one million dollars, and for no apparent reason except personal enrichment. No more is required.

### III. Conclusion

For the foregoing reasons, Gierbolini's sentence is affirmed.

**Affirmed.**