Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 17-1689

UNITED STATES OF AMERICA,

Appellee,

v.

GOODWIN VARGAS-GONZALEZ, a/k/a Gou,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta and Barron, Circuit Judges.

John E. Mudd and Law Offices of John E. Mudd on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

April 19, 2019

**KAYATTA**, **Circuit Judge**.    Goodwin Vargas-Gonzalez ("Vargas") pled guilty to one count of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860.  Vargas was sentenced to 168 months' imprisonment, followed by a ten-year term of supervised release.  Vargas challenges the reasonableness of his sentence.  For the following reasons, we affirm.

## I.

Beginning at the latest in 2009 and up until March 2016, Vargas conspired to possess with intent to distribute cocaine, cocaine base, heroin, and marijuana in Ponce, Puerto Rico, within one thousand feet of the Santiago Iglesias Public Housing Project (a housing facility owned by a public housing authority), in violation of 21 U.S.C. §§ 841(a)(1), 846, 860.[1]  During the conspiracy, Vargas was one of the leaders of a drug-trafficking organization.  Members of the organization employed violence, participating in shootouts and a drive-by murder.

As one of the organization's leaders, Vargas supervised the affairs of its drug distribution points, runners, and street sellers, and collected rent from the proceeds of drug points.  He

---

[1] Because Vargas pled guilty, "we draw our account from the plea agreement, the undisputed portions of the pre-sentence investigation report . . . , and the transcripts of the change of plea and sentencing hearings."  United States v. Montañez-Quiñones, 911 F.3d 59, 61 (1st Cir. 2018), cert. denied, No. 18-7896, 2019 WL 635196 (U.S. Mar. 25, 2019).

also possessed firearms and allowed other conspiracy members to possess firearms to further the conspiracy's objectives. Vargas acknowledged that during the span of the conspiracy, he possessed with intent to distribute at least fifteen kilograms but less than fifty kilograms of cocaine.

On March 3, 2016, Vargas and thirty-nine co-conspirators were indicted by a federal grand jury in the District of Puerto Rico. Vargas was charged with six counts: (1) conspiracy to possess with intent to distribute controlled substances; (2)-(5) aiding and abetting in the possession with intent to distribute heroin, cocaine, cocaine base, and marijuana; and (6) conspiracy to possess firearms in furtherance of a drug-trafficking crime. On October 6, 2016, Vargas and the government entered into a plea agreement whereby Vargas pled guilty to one count of conspiracy to possess with intent to distribute controlled substances.

As part of the plea agreement, the parties submitted advisory Sentencing Guidelines calculations, recommending that Vargas's Total Offense Level be set at thirty-four. The agreement also contained the following sentencing recommendation:

> After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties reserve the right to recommend a sentence within a range of 151-168 months of imprisonment if CHC I for a total offense level of 34 when combined with defendant's criminal history category as determined by the Court. If defendant is CHC II or higher, the parties agree to

recommend a sentence at the lower end of the applicable guideline range for a total offense level of 34 when combined with defendant's criminal history category as determined by the Court. The parties agree that any recommendation for a term of imprisonment below the above stipulated will be a material breach of the plea agreement.

The presentence investigation report ("PSR") largely tracked the parties' agreed upon advisory Guidelines calculations, with one caveat: Instead of suggesting a 2-level enhancement for Vargas's leadership role in the offense, the PSR recommended a 3-level enhancement. On Vargas's objection, the district court stated that it would not accept the higher-level enhancement recommendation.

At sentencing, before hearing from the government and before explaining the basis for the sentence, the district court referred to the shootouts and the drive-by murder connected to the drug-trafficking organization, stating that it hoped Vargas would change his behavior after being released from prison.

The government and Vargas both requested a 151-month sentence. The district court, however, sentenced Vargas to 168 months' imprisonment. This sentence was at the middle of the Guidelines range, which was 151-188 months based on a Total Offense Level of 34 and a Criminal History Category of I. Citing the section 3553 factors, the district court noted the following:

(1) Vargas was thirty-six years old, with two dependents, and had completed a GED;

(2) Vargas had been unemployed for at least eight months prior to his arrest, had previously been a part-time assembly technician at a pharmaceutical business making minimum wage, and had worked in construction as well;

(3) Vargas was in good physical and mental health, but had disclosed an "emotional situation" years prior related to marital problems for which he did not undergo any medical or mental health treatment;

(4) Vargas used marijuana sporadically throughout his adult life and had tried non-prescribed Percocet on one occasion;

(5) Vargas submitted to a urinalysis five days after being indicted which yielded negative results;

(6) Vargas had a prior adjudication for a weapons-related misdemeanor violation, which was considered relevant conduct;

(7) "[R]elevant and significant [was] the seriousness of the offense to which [Vargas] pled guilty and the actions in which the organization of which he was one of three leaders . . . , and the dealings and manners and objectives of the conspiracy, along with the large number of members that were involved"; and

(8) Vargas stipulated to:  acting as one of the leaders of the drug-trafficking organization; collecting rent from the proceeds of drug distribution points; having supervisory authority over the affairs of drug points, runners, and street sellers of the organization; and possessing firearms and allowing other members of the conspiracy to possess those weapons to further the objectives of the conspiracy.

The district court stated that it considered "all of those factors" listed above, putting particular emphasis on Vargas's leadership role "and the significance of that role and the overall actions of the drug trafficking organization."

Before the sentencing hearing concluded, Vargas's counsel asked the district court to reconsider the sentence, referencing the court's prior comments on the shootouts and drive-by murder. The court responded that it did "not count[] anything regarding murders" and that it "placed that as an example of the sad situation in which the existence of rival gangs that engage in shootings sometimes have sad consequences for innocent bystanders." When pressed, the district court stated:

> I think that I have made reference to what I clearly considered in sentencing the defendant within the guidelines. But if I considered any specific act of violence or murder I would have gone over the guidelines. Actually I am not considering that type of situation. The government here mentioned three different leaders and she said, the government said that and what I limited my findings were and I read precisely in the stipulated Version of Facts that appears in the plea agreement when he stipulated to everything that I considered in imposing the sentence and which I read on the record. Reconsideration denied.

This appeal followed.

## II.

Vargas takes issue with his sentence.[2] Specifically, he argues that the sentence is unreasonable because: (1) the district court did not sufficiently discuss the section 3553(a) factors;

---

[2] Though Vargas's plea agreement contains an appellate waiver that Vargas argues is inapplicable, "[w]e have not . . . explored that terrain here" because the government does not argue that Vargas's appeal is barred by the waiver and has therefore "waived any application of the appeal waiver." United States v. Caramadre, 807 F.3d 359, 377 n.9 (1st Cir. 2015).

(2) the court's judgment was influenced by activities connected to the drug-trafficking organization with which Vargas himself had no connection; and (3) the court used Vargas's organizational leadership and use of firearms and drugs to "further punish [Vargas] by sentencing [him] to the very highest level when the recommendation at sentencing was 151-months."[3]

We begin first with an analysis of the procedural reasonableness of the sentence imposed. See United States v. Owens, 917 F.3d 26, 41 (1st Cir. 2019) ("First, we ensure the district court did not commit any procedural errors, such as 'failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" (quoting United States v. Gierbolini-Rivera, 900 F.3d 7, 12 (1st Cir. 2018))). A sentencing court certainly has a duty to consider the section 3553(a) factors, but it "need not do so mechanically," United States v. Cortés-Medina, 819 F.3d 566, 571 (1st Cir. 2016) (quoting United States

---

[3] Though Vargas does not characterize his arguments as such, the government asserts that we should treat them as challenges to the procedural reasonableness of the district court's sentence. Out of an abundance of caution, we will review both the procedural and substantive reasonableness of the district court's sentence. To the extent that the proper standard of review for unpreserved substantive reasonableness claims "remains an open question in our circuit," United States v. Cruz-Olavarria, No. 17-1761, 2019 WL 1375035, at *3 n.5 (1st Cir. Mar. 27, 2019), we note that all of Vargas's challenges -- procedural and substantive -- fail even under review for abuse of discretion.

v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)), nor must it "walk, line by line, through [those] factors," id. (citing United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).  In that vein, this court has "warned against 'read[ing] too much into a district court's failure to respond explicitly to particular sentencing arguments.'"  Id. (quoting Clogston, 662 F.3d at 592 (alteration in original)).

The district court began by generally referring to the section 3553(a) factors.  It then considered Vargas's age, dependents, education, employment, physical and mental health, drug use, and criminal history.  The court also took into account the nature and circumstances of the offense, discussing the size of the conspiracy, Vargas's leadership role, the conspiracy's drug distribution objectives, and the use of firearms as a means of accomplishing those objectives.  We easily find the court's explanation and discussion of the section 3553(a) factors sufficient, particularly given that the sentence was within the Guidelines range.  See Clogston, 662 F.3d at 592 ("[S]uch a sentence requires less explanation than one that varies from the [Guidelines range].").  That Vargas may wish that the district court had weighed the section 3553(a) factors differently is not enough to warrant vacating his sentence; the balancing of sentencing factors "is precisely the function that a sentencing court is expected to perform."  United States v. Ledée, 772 F.3d

21, 41 (1st Cir. 2014) (quoting United States v. Suárez-González, 760 F.3d 96, 102 (1st Cir. 2014)); see also Clogston, 662 F.3d at 593 ("[T]he weighting of [the section 3553(a)] factors is largely within the court's informed discretion.").

Vargas's claim that the district court improperly relied on the conspiracy's connection to shootouts and the drive-by murder is belied by the record. When asked whether it had factored in these violent events, the court responded that it did "not count[] anything regarding murders" and that it referenced them "as an example of the sad situation in which the existence of rival gangs that engage in shootings sometimes have sad consequences for innocent bystanders." The district court repeated itself when Vargas's counsel asked again for reconsideration of the sentence, saying that it did not consider those acts of violence and that it "limited [its] findings" when imposing the sentence. Vargas provides no persuasive basis for us to discredit the district court's statements. The court referred to the shootouts and drive-by murder before it imposed and explained Vargas's sentence and made no reference to those acts when it identified and considered the section 3553(a) factors. On this record, we need not decide whether the district court had a sufficient basis to attribute those events to Vargas.

To the extent that Vargas challenges the sentence's substantive reasonableness, he again engages in a losing battle.

This court will "find a sentence substantively reasonable 'so long as the sentencing court has provided a plausible sentencing rationale and reached a defensible result.'" Owens, 917 F.3d at 41 (internal quotations omitted) (quoting Gierbolini-Rivera, 900 F.3d at 12). And because the district court sentenced Vargas within the applicable Guidelines range, the sentence is entitled to a "presumption of reasonableness." United States v. Ortíz-Mercado, No. 17-1383, 2019 WL 1416620, at *3 (1st Cir. Mar. 29, 2019).

Vargas has not sufficiently rebutted this presumption. Though he states that the district court "further punish[ed] him by sentencing [him] to the very highest level when the recommendation at sentencing was 151-months," the district court was not obligated to accept the parties' recommendations, as was clearly acknowledged in the plea agreement. We find that the district court's consideration of the section 3553(a) factors at sentencing provided a "plausible" explanation for imposing Vargas's sentence and that the court ultimately reached a "defensible result." Owens, 917 F.3d at 41 (quoting Gierbolini-Rivera, 900 F.3d at 12). Discerning no error, we therefore will not "substitute [Vargas's] judgment for that of the sentencing court." Clogston, 662 F.3d at 593.

**III.**

For the foregoing reasons, we <u>affirm</u> the district court's sentence.